Barbara LOE, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

No. 84–5369.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1985.

Decided July 26, 1985.

As Amended July 26, 1985.

**412**

June D. Kalijarvi, Washington, D.C., with whom George M. Chuzi, Washington, D.C., was on brief, for appellant.

Patricia J. Kenney, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., R. Craig Lawrence, and Royce C. Lamberth, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before ROBINSON, Chief Judge, GINSBURG, Circuit Judge, and WEIGEL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge.

Barbara Loe is attempting through this action to achieve a complete adjudication of her claims that her federal employer violated Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 241, 253 (codified as amended at 42 U.S.C. §§ 2000e to 2000e–17 (1982)), and the Age Discrimination in Employment Act of 1967, Pub.L. No. 90–202, 81 Stat. 602 (codified as amended at 29 U.S.C. §§ 621–634 (1982)). She has been exposed to bureaucratic routing Byzantine in design, and utterly lacking in the perspective Congress intended for agency implementation of equal employment opportunity legislation.

Loe's probationary employment as a research analyst for the Department of Health, Education, and Welfare (HEW or Department) ended through termination in May 1976. After investigation, the agency found Loe had experienced discrimination because of her race (Asian) and national origin (China). Absent that discrimination, HEW conceded, Loe would have successfully completed her probationary period. Loe's initially successful pursuit of administrative redress yielded reinstatement, back pay, and, critical to the current controversy, HEW's promise of priority consideration for promotions for a one year period commencing February 1, 1977. HEW reneged on its promise. Loe then obtained from the Civil Service Commission a determination of her entitlement to a second year of priority consideration, starting in August 1978. Believing that HEW had dishonored this renewed obligation, Loe sought further administrative redress. Ultimately, in January 1981, she turned to the district court. There, her plea that HEW had failed to perform as promised encountered dismissal on exhaustion and timeliness grounds.

The record of Loe's long journey from HEW's original remedial failure to her court complaint is crowded with administrative charges, agency rulings, appeals within the executive branch, requests for reopening, and entreaties to her employer and to equal employment opportunity personnel detailing her grievance. She amply satisfied every purpose and element of Ti-

---

* Of the U.S. District Court for the Northern District of California, sitting pursuant to 28 U.S.C. § 294(d).

tle VII's threshold requirements. Because the government erected, and the district court approved, an obstacle course we find manifestly inapt, we reverse the judgment dismissing Loe's complaint. We hold that she has indeed exhausted with all due diligence her administrative remedies, and has timely proceeded to court.

## I

### A. Discrimination and Promise of Amends

Barbara Loe, an Asian woman born in China, was hired on May 11, 1975, to work in HEW's Office of Human Development (OHD) as a GS–13 Social Science Research Analyst.[1] HEW terminated Loe's employment on May 6, 1976, four days before the close of her first-year probation period. Joint Appendix (J.A.) 91–92. On May 27, 1976, after meeting with an equal employment opportunity (EEO) counselor, Loe filed an administrative charge alleging that proscribed discrimination triggered her termination. J.A. 91.

The EEO staff within HEW found that Loe had been terminated because of her race and national origin (but not age or sex), and that but for the discrimination, Loe would have successfully completed her probationary period. J.A. 103.[2] HEW adopted the proposed findings and remedial recommendations of its EEO staff on February 1, 1977, and ordered OHD to reinstate Loe, with back pay, in a different division. The Department also directed OHD to "give [Loe] priority consideration, limited to one year from the date of this decision, to compensate for all promotions she could not be considered for because of the discrimination she suffered, for any GS–14 in OHD for which she qualifies and

indicates an interest in." J.A. 105. Loe accepted this disposition of her case. *See* Supplemental Appendix (S.A.) 2.

### B. Dishonor and Pursuit of Redress

The promise of priority consideration[3] proved hollow. Loe reported for her new assignment in HEW's Administration on Aging (AOA) on March 21, 1977. Affidavit of Barbara Loe at 3, J.A. 41. From April through December 1977, she sought information about GS–14 positions from OHD's personnel department "many times," but was told "each time" that "there were 'no openings.'" *Id.* Early in January 1978, Loe contacted OHD's Director of EEO about HEW's apparent failure to carry out the priority consideration remedy. *Id.* The EEO Director obtained from OHD a list of fifteen GS–14 vacancies that had occurred during the priority period. *See id.;* J.A. 48. HEW had advised Loe of none of them.

At this point Loe did not know whether she had in fact been entitled to priority consideration for any of the fifteen vacancies, or whether the agency, perhaps, had properly determined that she was unqualified or otherwise not eligible for consideration. Nonetheless, the one year priority period would soon end, and Loe believed some action was necessary to avoid forfeiting her rights. Thus, while she continued to seek more information, she also wrote to HEW's EEO Director on January 31, 1978, to notify him of the Department's apparent default, to request an investigation—including a determination whether there had been further discrimination—and to ask that her "discrimination complaint be reopened at the point of implementation of

1. The Department of Health, Education, and Welfare (HEW) is now the Department of Health and Human Services. Its Office of Human Development (OHD) became the Office of Human Development Services in an August 1978 agency-wide reorganization. *See* Supplemental Appendix (S.A.) 27–31. For convenience and simplicity, we use the earlier designations.

2. HEW's EEO staff recommended retroactive reinstatement, correction of personnel records to show satisfactory completion of the proba-

tion period, expungement of adverse personnel records, and efforts to assign Loe to a division under a different supervisor. J.A. 104.

3. "Priority consideration" entitles an employee to "bona fide consideration by the selecting official before any other candidates are referred for consideration. The employee is not considered in competition with other candidates and is not compared with the other candidates." HEW Merit Promotion Program, Part 335–6–60B, *reprinted in* S.A. 7.

remedy." J.A. 110.[4] Simultaneously, Loe "appeal[ed]" to the Civil Service Commission's (CSC) Appeal Review Board (ARB) asserting that HEW had not complied with the priority consideration component of the Department's February 1, 1977, decision. J.A. 111.

From February through April 1978, Loe tried to resolve the matter informally through discussions and correspondence with officials in OHD's EEO and personnel divisions and in AOA. Affidavit of Barbara Loe at 3–4, J.A. 41–42. Her efforts yielded an April 10, 1978, memorandum from the EEO Director enclosing an OHD-prepared chart of GS–14 vacancies and, for the first time, remarks purporting to excuse the failure to refer Loe for five of the positions. J.A. 52–54.[5] Shortly thereafter,

on April 18, 1978, Loe requested EEO counseling. J.A. 57.[6] After more than twenty-one days passed without achieving informal settlement, see 29 C.F.R. § 1613.213(a),[7] Loe requested a notice permitting her to file a formal charge with the Department. See J.A. 61.

On June 14, 1978, HEW denied Loe's January "reopening" request. See supra p. 413. The Department's decision declared "that [Loe had been] given priority consideration." J.A. 113. It advised Loe that she could appeal to the CSC–ARB within fifteen days. Id. She did so on June 30, 1978. J.A. 62. Loe also proceeded along the administrative charge route; she filed a formal charge against OHD on June 29, 1978, J.A. 65–71, alleging, in addition to matters no longer in contention,[8]

4. We think it clear, as did the Equal Employment Opportunity Commission (EEOC), see J.A. 142, 147–48, that Loe intended no challenge to HEW's favorable disposition of her complaint in February 1977. The gravamen is HEW's subsequent nonperformance.

Loe's request tracks provisions for reinstating a complaint "for further processing from the point processing ceased" in the event an agency does not carry out the terms of an "informal adjustment of a complaint." 29 C.F.R. § 1613.-217(a) (1984). Those provisions do not literally apply to formal, final decisions, nor is "reopening" the correct term of art. Cf. id. § 1613.235 (reopening). That the words Loe used as a lay person carry special meaning in a lawyer's lexicon supplies no just cause to rebuff her plea.

5. Loe's specific criticisms of the excuses tendered in the chart, which she presented in a memorandum to the EEO Director dated April 16, 1978, J.A. 55, match the conclusions later reached by the Civil Service Commission's Office of Federal Equal Employment Opportunity (OFEEO). See infra p. 415. Loe noted that her former job was with the Office of Child Development (OCD), now called the Administration for Children, Youth and Families (ACYF). Two openings about which Loe had not been advised went to Loe's former OCD co-workers; thus the chart's remark "Area of consideration limited to ACYF due to ceiling restrictions," see J.A. 53, did not justify bypassing Loe. J.A. 55 (Loe's criticism); J.A. 115 (OFEEO decision). HEW deprived Loe of a March 14, 1977, opening in AOA by treating its obligation as not having matured until Loe recommended Department employment on March 21, 1977. J.A. 113. This appears contrary to the terms of the promise made in HEW's decision. See J.A. 105 (pri-

ority consideration for one year running from February 1, 1977); J.A. 56 (Loe's criticism). A fourth position was cancelled by an official involved in Loe's original discharge; Loe viewed that action as indicating reprisal and continuing discrimination. See J.A. 56–58.

6. The request for EEO counseling focused on a possible charge of reprisal stemming from cancellation of one position. J.A. 57–58. Loe also specifically brought to the attention of the counselor HEW's failure to consider her for two other positions. J.A. 58–60.

7. The present EEOC regulations, located at 29 C.F.R. §§ 1613.201–.283 (1984), recodify the Civil Service Commission rules formerly set out at 5 C.F.R. §§ 713.201–.283 (1978). The rules were moved in 1979 after President Carter's Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19,807 (1978), transferred many of CSC's enforcement functions under § 717 of Title VII, 42 U.S.C. § 2000e–16 (1982), to EEOC.

8. Loe agreed to dismissal of count two of her court complaint, see S.A. 1, which was based on allegations made previously in her June 29, 1978, administrative charge that, by way of reprisal, (a) she had not been assigned responsibilities commensurate with her experience and training, (b) an attempt was made to reduce the scope of her job, and (c) she was excluded from meetings and planning sessions. See J.A. 65–71 (administrative charge); J.A. 173–77 (amended complaint). These claims have a procedural history as labyrinthine as that of the remaining claims, set out infra note 9. The voluntary dismissal spares us the task of recounting it. We note, however, that Loe's odyssey entailed more labors than we report.

that failure to refer her for three positions and cancellation of a fourth, contrary to the "remedy pertaining to my earlier [charge] of discrimination," demonstrated that "the discriminatory acts continue." J.A. 70.[9]

## C. Renewed Obligation

Meanwhile, the cautionary "appeal" Loe had filed with the CSC–ARB in January 1978 acquired a life of its own. The ARB recognized that Loe was entirely satisfied with the original decision, including the proffered remedies, and that she intended to challenge only HEW's default in implementing one of those remedies—a matter outside ARB's bailiwick. S.A. 18. ARB referred Loe's appeal to CSC's Office of Federal Equal Employment Opportunity (OFEEO), *id.*, which concluded, on July 21, 1978, that HEW had not implemented the priority consideration provision. J.A. 114–16. As Loe had maintained in an April 16, 1978, memorandum to HEW's EEO Director immediately prior to seeking EEO counseling, J.A. 55–56,[10] and consonant with her June 29, 1978, formal administrative charge, *see* J.A. 70, OFEEO concluded that HEW's excuses were not valid. J.A. 115.

By way of recompense, OFEEO instructed that HEW should grant Loe priority consideration for a second year, beginning August 1, 1978. J.A. 116.[11] HEW agreed.

It characterized this undertaking as an "exten[sion of] Dr. Loe's period of priority consideration." S.A. 22–23.

## D. Alleged Dishonor of Renewed Obligation and Pursuit of Redress

HEW's promise again bore no fruit. Loe was considered, but not selected, for three GS–14 positions created as a result of an August 1978 agency-wide reorganization of OHD. Brief for the Appellee at 12–14. Having learned in late August 1978 that she had been passed by, Loe wrote OHD's Personnel Director on August 30, 1978, and requested information on whether she had been given priority consideration. S.A. 36. The response cited lack of supervisory experience as the reason Loe was not chosen for one position, located in the Administration for Children, Youth and Families, S.A. 37–39, but gave no explanation regarding the other two posts, located in AOA. Seeking "timely resolution to the complaint," Loe brought to OFEEO's attention the facts she knew on October 22, 1978, that led her to believe her nonselection for the AOA positions entailed continuing discrimination and default on HEW's remedial obligation. J.A. 117–19.

On December 11, 1978, the Assistant Secretary for OHD announced her decision that Loe had been afforded bona fide priority consideration for the two AOA posi-

---

On August 25, 1978, HEW accepted the reprisal claims listed above for administrative processing. S.A. 24–26. We reject the implication, in Brief for the Appellee at 11, that Loe's failure to object to the August 25, 1978, statement of accepted issues forfeited court consideration of other issues. To the contrary, the record shows that Loe vigorously pressed, and the agency specifically ruled upon, her June 29, 1978, charge, as supplemented, of remedial default. *See infra* pp. 415–16.

**9.** Loe's June 29, 1978, administrative charge includes the following allegations:

With respect to the remedy pertaining to my earlier complaint of discrimination, the discriminatory acts continue in that:

a. I was not referred for three positions for which I qualified as required by the remedy; and

b. A position for which I qualified and was the only candidate was cancelled by the individual found to be the discriminatory individual in the earlier complaint.

c. I have been denied a fair opportunity for competing for a GS–15 promotion by the failure of a compliance in good faith with my EEO decision for priority consideration for a GS–14.

J.A. 70.

**10.** *See supra* note 5.

**11.** OFEEO considered HEW's decision of June 14, 1978, avowing compliance with the promotion priority specification (an avowal found wanting by OFEEO) a "final determination" rather than a denial of "reopening." J.A. 114. Because the June 14 decision preceded Loe's June 29, 1978, formal administrative charge,

tions. J.A. 122.[12] In response to Loe's inquiry about appeal rights, HEW's EEO Director, on January 24, 1979, issued the Department's decision, which similarly found good faith compliance, and advised that Loe could appeal within fifteen days to EEOC's Office of Review and Appeals (ORA). J.A. 124–25.[13]

Loe appealed to ORA on January 31, 1979. J.A. 83–85. She also continued to press her cause before OFEEO; her January 22, 1979, letter to OFEEO recounts HEW's latest adverse decision, details evidence that, Loe believed, pointed to discrimination as the basis for not selecting her, and "present[s] the whole matter to you[ ] for a fair review." S.A. 51–56. Eventually, on December 8, 1980, EEOC's Technical Guidance Division (TGD), the successor to OFEEO, rejected the merits of her contentions. J.A. 142–45.[14]

Loe filed a complaint in district court on January 9, 1981. J.A. 150. The district judge dismissed the claim of HEW's default on the initial year of priority consideration; he reasoned that Loe had not seasonably appealed or pursued judicial relief from HEW's decision to grant a second year of priority. *Loe v. Schweiker*, No. 81–0057, mem. op. at 11–12 (D.D.C. Aug. 10, 1983), J.A. 20–21. On reconsideration, the district judge dismissed, as well, allegations relating to the extended period for priority consideration because Loe had neither reapproached an EEO counselor nor filed a discrete formal administrative charge pinpointing her August 1978 nonselection. For the same reasons, the court dismissed Loe's related age discrimination allegations. *Loe v. Heckler*, No. 81–0057 (D.D.C. Feb. 13, 1984), J.A. 24–30.

■ We conclude that the record manifests timely and complete satisfaction of Title VII's prerequisites to suit.[15] We emphasize at the outset the principles informing those requirements; our opinion in this case, in keeping with the congressional design, is intended to forestall future agency argument or district court decision incongruent—as the handling of Loe's pleas was—with Title VII's remedial purposes.

## II

Since 1972, Title VII's panoply has sheltered federal government employees from discrimination based on race, color, religion, sex, or national origin.[16] Congress

however, we do not regard it as "final action" on that charge. *See infra* p. 420.

**12.** HEW's EEO and Personnel Divisions had internally reviewed the reasons given by the selecting official, Byron Gold, for rejecting Loe. Mr. Gold was Loe's "second line supervisor" at AOA, Brief for the Appellee at 13, and was named repeatedly in Loe's June 29, 1978, administrative charge. J.A. 67–70. The EEO Director noted a discussion Gold had with an EEO counselor in 1977 in which Gold "offered to resign rather than employ Dr. Loe in his unit because he did not want to handle another problem employee." J.A. 120. The Personnel Director observed, in October 1978, that this remark, together with the "existing EEO complaint against Mr. Gold by Dr. Loe," presented "a very thought-provoking question which cannot be overlooked." S.A. 50. Apparently, the question was overlooked in the Assistant Secretary's decision less than two months later.

**13.** EEOC's Office of Review and Appeals (ORA) now performs CSC–ARB's former role, and EEOC's Technical Guidance Division has succeeded to CSC–OFEEO's duties. The transfer of functions followed the 1978 Reorganization Plan. *See supra* note 7.

**14.** The appeal Loe had filed with EEOC–ORA was rejected on February 2, 1981, because jurisdiction belonged with EEOC–TGD. J.A. 146–49 (citing 29 C.F.R. § 1613.231). Loe amended her district court complaint accordingly on March 6, 1981. J.A. 165.

**15.** Loe specified age discrimination, in addition to race, national origin, and sex discrimination, in her administrative charge, J.A. 65, and court complaint. J.A. 150 (complaint); J.A. 167 (amended complaint). Because she did not give EEOC 30 days' notice of her intention to sue, *see* 29 U.S.C. § 633a(d) (1982), her age claims are viable only if she complied with administrative procedures required by EEOC regulations. *See id.* § 633a(b). The rules permit employees to pursue age claims through the same avenues specified for Title VII claims. *See* 29 C.F.R. §§ 1613.501–.521; B. SCHLEI & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1210 (2d ed. 1983). Because we determine that Loe completed the Title VII course, we vacate the dismissal of her age discrimination plea.

**16.** Title VII originally covered only private sector employees. *See* Pub.L. No. 88–352, 78 Stat. 241, 253 (1964). The Equal Employment Op-

charged employing agencies with the primary obligation to assure nondiscrimination in federal personnel actions. *See* Civil Rights Act of 1964 (as amended by Equal Employment Opportunity Act of 1972), § 717(a), (e), 42 U.S.C. § 2000e–16(a), (e) (1982). Correspondingly, Congress ordered first resort to agency processes before Title VII complainants repair to court. Section 717(c) renders filing an "initial charge" with the employing agency a prerequisite to court action, and it prescribes waiting periods and time limits for suit.[17] EEOC regulations detail steps and time limits for the administrative process.[18]

■ In construing and applying these procedural specifications and limits, courts should be mindful of the judiciary's crucial role in the statutory enforcement design. *See Brown v. General Services Administration*, 425 U.S. 820, 825–29, 96 S.Ct. 1961, 1964–66, 48 L.Ed.2d 402 (1976) (discussing congressional concern that, before the addition of § 717 to Title VII, the administrative process for handling discrimination claims was unsatisfactory and judicial review, clogged by sovereign immunity and exhaustion arguments, was ineffective or unavailable). Suit thresholds warrant interpretation with sensitivity to Title VII's remedial aims. An overly technical approach would improperly impede the goal of making federal employment free from proscribed discrimination. *See* H.R.Rep. No. 328, 92d Cong., 1st Sess. 23–25 (1971). We stress, in particular, that judges slight

the legislature's central command if they fail to recall that Title VII was devised as a measure that would be kept accessible to individuals untrained in negotiating procedural labyrinths. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982); *Bethel v. Jefferson*, 589 F.2d 631, 642–44 (D.C.Cir.1978); *Coles v. Penny*, 531 F.2d 609, 614–16 (D.C.Cir.1976).

We now discuss in turn Title VII's exhaustion and timeliness requirements, and detail how Loe abundantly fulfilled their aims.

### III

■ Loe's assiduous effort to gain administrative redress after HEW defaulted on its February 1977 promise of priority consideration establishes exhaustion adequate to satisfy any reasonable view of that requirement. Information Loe obtained from HEW's EEO Director on April 10, 1978, indicated that the proffered promotion preference remedy had not been administered, and that Loe had been kept in the dark concerning the unfulfilled promise. J.A. 52–54. In accordance with applicable regulations, *see* 29 C.F.R. § 1613.214(a)(1)(i) (1984), she initiated EEO counseling on April 18, 1978, well within the specified thirty days. J.A. 57. When counseling proved unavailing, Loe filed the statutorily required "initial charge" with the employing agency on June 29, 1978. J.A. 65–71.

portunity Act of 1972, Pub.L. No. 92–261, §§ 2, 11, 86 Stat. 103, 103, 111, brought federal, state, and municipal employees within Title VII's compass. *See* 42 U.S.C. § 2000e(b), (f) (defining "employer" and "employee"); *id.* § 2000e–16 (federal government employment).

17. Section 717(c) provides:

Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any suc-

ceeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant. *See also* 29 C.F.R. § 1613.281.

18. *See* 29 C.F.R. §§ 1613.211–.215; B. SCHLEI & P. GROSSMAN, *supra* note 15, at 1190–99, 1208–15.

These steps ensured that the agency had notice of Loe's grievance, and a fair opportunity to provide full redress or to attempt an informal accommodation. Title VII requires no more. *See Bethel v. Jefferson,* 589 F.2d at 644 ("[T]he basic demand ... is that the agency be given sufficient, even if technically flawed, notice of the grievance."); *cf. Zipes,* 455 U.S. at 398, 102 S.Ct. at 1135 ("[T]he particular purpose of the filing requirement [is] to give prompt notice to the employer."). Loe went beyond the legal requirement. Her outpouring of correspondence, charges, and appeals protested the nonperformance to the agency and EEO officials at virtually every turn. Notice overflows the record. Both the employer and CSC (later, EEOC) knew Loe's claims, participated extensively in her presuit struggle to achieve relief, and ultimately ruled on the merits. The agency has had its full day out of court.

Appellee faults Loe for initiating EEO counseling on April 18, 1978, rather than within thirty days of January 31, 1978, when HEW's initial breach was perfected. In January, however, Loe's sense that the agency had dishonored its obligation was based on surmise; she knew only that she had not been advised of fifteen GS-14 vacancies. To avoid forfeiting any rights through a technical lapse, she filed an appeal and a request to reopen "at the point of implementation" on January 31, 1978. J.A. 110–11. From February through April, J.A. 41–42, she pressed the agency and its EEO Director for more information, but the agency played close to the vest; it maintained that no vacancies at all fell within the ambit of its obligation. On April 18, 1978, eight days after Loe obtained from the EEO Director a list of vacancies and the agency's first explanatory words, *see* J.A. 52–54, she requested counseling. J.A. 57. In short, as promptly and precisely as the circumstances allowed, Loe provided her agency and, notably, its EEO officials, with notice of, and an opportunity to address, her concerns that a promised remedy to redress discrimination had been evaded.[19]

Loe's request for EEO counseling, made shortly after uncovering facts pointing to her agency's failure to perform its undertaking, satisfied more than the spirit of Title VII's procedural regime. Her request, it appears to us, went by the book. "Under Title VII, if an employee did not at the time know or have reason to know that an employment decision was discriminatory in nature, the time limits for filing an administrative complaint may be tolled." *Stoller v. Marsh,* 682 F.2d 971, 974 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983); *cf., e.g., Tucker v. United Parcel Service,* 657 F.2d 724 (5th Cir.1981) (180 days for filing EEOC complaint tolled for black seasonal employees, who had received notice that they were not being recalled, until they learned white employees were being recalled).[20] The time within which EEO

---

19. Had Loe omitted to request counseling, we would nonetheless find her charge within the pale. "It is the duty of [the agency] to root out discrimination, and that responsibility is hardly discharged by reliance on technical miscues that could easily have been rectified without harm to anyone." *Bethel v. Jefferson,* 589 F.2d at 645. In light of Loe's substantial efforts to obtain informal resolution and avoid procedural forfeiture, "we perceive no palatable excuse" why the agency did not itself refer Loe's concerns, when first sounded, to an EEO counselor. *See id.* As in *Bethel,* Loe "could have done little more, and the agency could hardly have done less." *Id.*

We note, additionally, that Loe's January 31, 1978, request for reopening described the basis for her suspicion of unredressed discrimination with sufficient clarity and specificity to consti-

tute an "initial charge" within the meaning of § 717(c). Thus, even if Loe's formal charge of June 29, 1978, had been tardy, we would sustain her inauguration of administrative processing as seasonable.

20. Like its statutory counterpart applicable in private sector litigation, *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the time limit imposed by regulation for filing an initial charge with the agency "is not a jurisdictional prerequisite to suit in district court; it operates 'like a statute of limitations, [which] is subject to waiver, estoppel and equitable tolling.'" *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983) (quoting *Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132) (brackets in *Kizas* ), *cert. denied,* —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

counseling must be sought is likewise tolled until the claimant knows or has reason to know the facts that would support a charge of discrimination. *See, e.g., Oaxaca v. Roscoe,* 641 F.2d 386 (5th Cir.1981); *Snead v. Harris,* 22 Fair Empl.Prac.Cas. (BNA) 1434 (D.D.C.1980) (EEOC counseling initiated within thirty days after plaintiff learned of discriminatory basis was timely, although five months after promotion was denied). Agency assertion of a tardy counseling request as a dispositive response is particularly disturbing where, as in Loe's case, the asserted delay is attributable to the agency's resisting an employee's diligent efforts to ferret out the facts.[21]

The district judge found Loe's administrative charge, filed June 29, 1978, wanting due to its silence about HEW's subsequently bypassing Loe for three GS–14 vacancies in August 1978. *Loe v. Heckler,* No. 81–0057, mem. op. at 2 (D.D.C. Feb. 13, 1984), J.A. 25. We perceive no such infirmity.

■■■ Loe's June 29, 1978, charge, as supplemented by her October 22, 1978, letter to OFEEO, sets out her contentions that HEW reneged on its original and extended undertakings to provide priority consideration. The October 22, 1978, letter details the circumstances of Loe's nonselec-

tion in August and asks for "timely resolution to the complaint," J.A. 117–19; the letter put OFEEO on sufficient notice that, indeed, Loe charged "the discriminatory acts continue." The Department's January 24, 1979, determination, J.A. 124–25, that Loe had been given bona fide priority consideration in August, belies any notion that HEW lacked notice or fair opportunity to address that matter.

All parties understood HEW's failure to provide priority consideration in August 1978 to be within the scope of the administrative charge. While appealing actions taken on portions of the administrative charge not now in dispute,[22] Loe reminded EEOC that "a priority consideration case ... is currently being reviewed," and pointed out that it was "initially filed with this [charge]." J.A. 133; *see also* J.A. 136. In HEW's eventual decision on those other facets of the charge, rendered on October 22, 1979, the agency declined to address the priority consideration matter because, it explained, it had previously done so and Loe had appealed to EEOC. J.A. 129. HEW's October 1979 decision, however, clearly acknowledged that nonselection in August 1978 came within Loe's charge.[23]

■■■■ Even absent such explicit indications of the linkage between Loe's initial

Whether the period within which suit may be filed is jurisdictional remains an open question in this circuit. *See Nordell v. Heckler,* 749 F.2d 47, 50 (D.C.Cir.1984). We have no occasion to decide whether the Supreme Court's discussion of equitable tolling in the context of time limits for filing suit in *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), settles the issue.

21. Misrepresentation or other misleading conduct by the agency or EEOC tolls the limitations period. *See Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584 (5th Cir.1981) (en banc) (ADEA); *Cooper v. Bell,* 628 F.2d 1208 (9th Cir. 1980); *Wilkerson v. Siegfried Ins. Agency,* 621 F.2d 1042 (10th Cir.1980) (employer represented that position was being eliminated); *Leake v. University of Cincinnati,* 605 F.2d 255 (6th Cir. 1979); *cf. Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) (no indication of misconduct lulling plaintiff into inaction); *Smith v.McClammy,* 740 F.2d 925, 927 (11th Cir. 1984)(plaintiffwas simply unaware, not misled).

22. *See supra* note 8.

23. HEW's October 1979 decision includes the following discussion of the priority issue:

 In your current complaint you also referred to the priority consideration which was promised as a result of your former discrimination complaint. The record shows that you were awarded priority consideration for two GS–14 positions but were not selected. You appealed your non-selection to the Department and the Department decided that the Administration on Aging did act in good faith in implementing the Department's decision that you were to be awarded priority consideration. The Department accepted the reasons given by the selecting official for not selecting you for either of the two positions in question. You have appealed the Department's decision to the Equal Employment Opportunity Commission. Therefore, the priority consideration issue is not being further considered in this decision.
 J.A. 129.

charge and her supplementary correspondence, we would find Loe's administrative filings sufficient. An administrative charge specifying a pattern of ongoing discrimination will be interpreted as incorporating instances of subsequent, essentially similar conduct. *See Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984). So long as the employer 1) was on notice that its actions allegedly violated Title VII, and 2) has been afforded an adequate opportunity to pursue a mutually satisfactory resolution with the employee, no purpose would be served by demanding a stream of further administrative pleadings denoted "charge" or "complaint." We underscore again that the strictures of common law pleading have no place in a scheme largely dependent upon self-service in drawing up administrative charges. Even if Loe did file the wrong writ or declaration, we would deny the special demurrer.

In *President v. Vance,* 627 F.2d 353 (D.C.Cir.1980), we insisted on liberal construction of Title VII charges and related documents. President's administrative charge focused on race discrimination motivating an adverse performance evaluation. The district court dismissed his claim of bias regarding promotion, citing exhaustion, and we reversed. President had mentioned an agency policy of hindering minority promotion in his initial request for remedies, in a discussion with an EEO counselor, and in a letter rejecting his employer's proposal for relief. *See id.* at 358–59, 361. We observed: *"The [charge] and other documents* in the administrative record were more than adequate to put the [agency] on notice that President believed that he had been subjected to racial discrimination adversely affecting his promotional opportunities, and that he considered promotion to GS–13 an appropriate form of relief." *Id.* at 361 (emphasis added).

■■■ No different approach is warranted merely because post-charge conduct is asserted. *See Almendral v. New York State Office of Mental Health,* 743 F.2d at

965–68 (court may consider subsequent instances of nonpromotion reasonably related to charges filed with EEOC); *Waiters v. Parsons,* 729 F.2d 233 (3d Cir.1984) (per curiam) (prior administrative charge and investigation of continuing discrimination and retaliation satisfy exhaustion threshold for suit challenging later discharge). An employee may not, of course, enlist the court's aid on claims never presented for agency consideration. *See DeMedina v. Reinhardt,* 444 F.Supp. 573, 578 (D.D.C. 1978) ("at no time prior to the institution of this suit was the [agency] notified of plaintiff's contention that it had violated Title VII" through post-charge conduct). Nor may the initial charge be dispensed with entirely. *See Kizas v. Webster,* 707 F.2d at 544–45. When, however, the initial charge and other documents achieve the ends of the exhaustion requirement, no more may be asked if the "wholesome objective" of antidiscrimination legislation is to be served. *President v. Vance,* 627 F.2d at 363.

## IV

A suit contesting an agency's final action on the employee's charge, or the EEOC's decision on appeal, must be brought within thirty days of notice of the adverse determination. Section 717(c), 42 U.S.C. § 2000e–16(c) (1982). Loe filed her court complaint within the prescribed time.

■■■ The agency took action on Loe's June 29, 1978, initial charge when it agreed to extend the period for priority consideration from August 1, 1978, through July 31, 1979. S.A. 22–23. But that action, on its face, was favorable, and prolonged the period for performance. The priority period extension could not logically constitute the agency's final action regarding episodes of continuing noncompliance occurring during the extension period, primarily in August 1978—episodes that were, as we have seen, fairly encompassed by Loe's administrative pleadings.[24] Not until January 24, 1979, when HEW's EEO Di-

---

24. *See supra* pp. 419–20.

rector ruled that Loe had been given bona fide priority consideration in August 1978, J.A. 124–25, did "final action" trigger Title VII's time provisions.[25] Loe responded to HEW's final action with a timely appeal to EEOC–ORA on January 31, 1979. J.A. 83–85. The clock then returned to an off position. It started again December 8, 1980, when EEOC–TGD (successor to CSC–OFEEO) held against Loe on the merits. J.A. 142–45. Loe filed suit on January 9, 1981, within thirty days of notice of EEOC–TGD's decision. J.A. 150.

The government maintained before the district court, and again on appeal, that the thirty day period for filing suit began February 1, 1977, when HEW rendered its wholly favorable decision. This is irresponsible argument. Loe was satisfied with the February 1977 outcome and the stated remedy. She had no grievance until HEW reneged. To insist that Loe have anticipated her employer's dishonoring its Title VII commitment would require that we attribute either the vision of Cassandra to employees or universal bad faith to employers. Title VII does not mandate preemptive strikes as a precondition to judicial oversight of subsequent misconduct. Appellee's contention to the contrary "is hardly worthy of our great government." *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir.1970).

 Appellee strives to characterize the December 8, 1980, and February 2, 1981, EEOC decisions, upon which the timeliness of Loe's court complaint rests, as denials of requests to reopen HEW's original finding of discrimination, and urges that such rulings may not serve as the predicate for timely suit. Reopening was the subject of neither decision, however. Each clearly recognizes that Loe objected solely to HEW's noncompliance with the February 1, 1977, disposition, and made no attempt to disturb that root disposition.

In contrast, the plaintiff in *Hofer v. Campbell*, 581 F.2d 975 (D.C.Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979), sought to resurrect his discrimination claim, which HEW and CSC–ARB had *rejected*, by petitioning to reopen that decision nine months late and subsequently appealing the denial of reopening. Hofer accepted a reassignment in his original department, although CSC–ARB had recommended assignment elsewhere, and elected to "postpone" his judicial remedy while he saw "how this works out for me." *Id.* at 977. Section 717(c) does not afford room for such a postponement. This court said, "[an] aggrieved employee cannot provisionally accept the Board's decision, await the outcome of mandated Agency corrective measures, and, if dissatisfied, request the Civil Service Commission to reopen and reconsider the decision and thereby revive his claim." *Id.* at 978. Loe did not seek to "revive" her claim, nor was her acceptance of HEW's decision at all provisional. Unlike Hofer, Loe sought effectuation of precisely the terms she accepted, an aim that harmonizes with the policy of finality.[26]

---

**25.** The district judge, focusing on finality, believed that Loe's failure promptly to challenge HEW's fresh promise to extend the priority remedy foreclosed claims regarding the initial nonperformance. We disagree. As discussed in text, HEW's adverse decision of January 24, 1979, not its renewed undertaking, was the relevant "final action." We point out shortly, *see infra* p. 421, that an employee need not anticipate her employer's default on its Title VII undertakings; this holds true for the alleged breach of HEW's second vow as well as its first. When Loe learned facts indicating that her nonselection for promotion in August 1978 may have entailed further HEW default and discrimination, she punctually informed OFEEO on October 22, 1978. J.A. 117–19. There was no

need, at that juncture, for Loe to go back to square one and request fresh EEO counseling. The dereliction specified in the correspondence supplementing Loe's charge was substantially identical to subjects of prior counseling. *See Almendral v. New York State Office of Mental Health]*, 743 F.2d at 967.

**26.** Had the agency honored its second vow, by affording Loe priority in the extension period, one might consider that to be adequate reparation for the initial default. But Loe's charge—the merits of which we do not reach—is precisely that the agency did not perform. Dishonored promises will not quiet claims they purport to resolve. *Cf. President v. Vance*, 627 F.2d at 363–64 (dispute over whether relief has

We conclude that Loe filed suit punctually; she circumvented neither the aims nor the literal terms of Title VII's time limitations.[27]

### CONCLUSION

HEW conceded that it wrongfully discharged Loe in 1976. To mend that wrong, it held out the promise of priority consideration—a promise that proved false. Called to task, the agency renewed its vow. Loe charges that the government never made good its word. In response, the agency offers argument made of tripwire; it has appropriated doctrines designed to ensure fair opportunity for voluntary compliance or informal settlement and deployed them to check, not forward, Title VII enforcement. Loe showered the agency with notice, as she invited it, repeatedly, to deal with her openly and honestly in a manner that an intelligent lay person could comprehend. Exhaustion and timeliness prerequisites cannot sensibly be applied to block judicial review of Loe's discrimination charges. After a nine year administrative quest, Loe is entitled to air her complaint in court.

*Reversed and remanded.*

been effectuated prevents mootness of Title VII claim).

**27.** Loe's concomitant charge of age discrimination, accordingly, retains vitality. *See supra* note 15.