**Kevin Jesse MCCANTS, Plaintiff,**

v.

**Daniel R. GLICKMAN, Secretary, U.S. Dep't of Agriculture, Defendant.**

No. Civ.A.00–2197.

United States District Court, District of Columbia.

July 31, 2001.

Kevin Jesse McCants, Bollingbrook, IL, pro se.

Lisa Sheri Goldfluss, Peter David Blumberg, U.S. Attorney's Office, Washington, DC, Sonia Orfield, U.S. Dept. of Health and Human Services, Washington, DC, for Daniel R. Glickman.

### MEMORANDUM OPINION

**Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Default Judgment; Denying Plaintiff's Motion for Judgment on the Pleadings and Summary Judgment**

URBINA, District Judge.

## I. INTRODUCTION

The *pro se* plaintiff, Kevin Jesse McCants, brings this employment discrimi-nation action against the United States Department of Agriculture ("USDA") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Mr. McCants, a black man, alleges that the USDA discriminated against him on the basis of his sex by hiring less-qualified black female attorneys in an effort to increase diversity.

The matter is currently before the court on the defendant's motion to dismiss for lack of subject-matter jurisdiction or, in the alternative, for summary judgment. The defendant claims that the court lacks subject-matter jurisdiction over the plaintiff's employment discrimination claim because the plaintiff failed to timely exhaust his administrative remedies. In response, the plaintiff has moved for entry of default judgment, or in the alternative, judgment on the pleadings or summary judgment. The plaintiff claims that the court should enter a default judgment against the USDA because the defendant improperly served its first responsive pleading. In the alternative, the plaintiff argues that he is entitled to either judgment on the pleadings or summary judgment.

After considering the parties' submissions, the court concludes that: (a) the defendant's service on the plaintiff satisfied the local rules of this court; and (b) the plaintiff failed to timely exhaust his administrative remedies, thereby depriving the court of subject-matter jurisdiction. Accordingly, for the reasons stated below, the court will grant the defendant's motion to dismiss and will deny the plaintiff's motions for default judgment and for summary judgment or judgment on the pleadings.

## II. BACKGROUND

On December 6, 1991, Mr. McCants interviewed for a position as an attorney

with the USDA. *See* Def.'s Statement of Material Facts at 1. Mr. McCants received a letter informing him of his non-selection for the position in May 1992. *See* Pl.'s Statement of Material Facts at 1. On September 1, 1994, Mr. McCants wrote a letter to then Secretary of Agriculture Michael Espy alleging discrimination in the 1992 selection process. *See id.* at 1–2. In his letter to Secretary Espy, Mr. McCants stated that the December interview was "tainted" and that he began "bracing" himself that day to be "kicked in the face by the Department of Agriculture." *See* Def.'s Ex. 1. Mr. McCants apparently perceived the white male interviewer's demeanor as belittling and unfair. *See id.;* Pl.'s Mem. at 3.

Mr. McCants did not complain to the agency about this allegedly unfair treatment either at the time of the interview or when he learned in May 1992 that he had not been selected for the position. Instead, Mr. McCants wrote the letter to Secretary Espy in 1994 after he learned that the USDA had hired nine black women graduates of Howard University School of Law ("Howard") in 1992 in an effort to "increase diversity" at the agency, and that the USDA Office of General Counsel employed only one black male attorney. *See* Compl. at 1–2; Def.'s Ex. 1. Mr. McCants argued that he should have been hired over these women "based on merit." *See* Def.'s Ex. 1.

Mr. McCants's letter to Secretary Espy was forwarded to the USDA's Office of Civil Rights Enforcement ("OCRE"), for processing as a complaint of employment discrimination. *See* Def.'s Ex. 2. The OCRE informed Mr. McCants that there was a question as to the timeliness of his discrimination complaint and requested specific information concerning "names, dates, substance of communications, and copies of correspondence" to determine when Mr. McCants first suspected that his non-selection was discriminatory. *See* Def.'s Ex. 5. The OCRE explained that a complainant must contact an Equal Employment Opportunity ("EEO") counselor within 45 days of a discriminatory act and that failure to meet this time frame could result in dismissal of the complaint. *See id.* In his response, Mr. McCants addressed a variety of interesting subjects but did not provide any information about his suspicion that the December 1991 interview was "tainted" or why he began "bracing" himself that day. *See* Def.'s Ex. 6. In the only part of his letter to address the OCRE's inquiry, Mr. McCants stated only that he wrote to Secretary Espy within three days of learning that the USDA had selected nine black female graduates of Howard as part of the 1992 hiring class. *See id.*

On March 8, 1996, Mr. McCants informed an EEO specialist that he first suspected that discrimination was a factor in his non-selection at the time of the interview because one of the interviewers treated him unfairly. *See* Def.'s Ex. 7. When asked why he did not raise the discrimination issue at the interview or when he learned of his non-selection, Mr. McCants responded that he did not have "tangible evidence" of discrimination until he learned about the nine black women hires. *See id.* Mr. McCants also stated that he had hopes of being hired by the USDA later so he "didn't want to make waves." *See id.*

On September 12, 1996, the USDA issued its final decision, dismissing Mr. McCants's claim of discriminatory non-selection for untimeliness. *See* Pl.'s Ex. 8. On October 14, 1998, the EEOC affirmed the agency's decision, finding that Mr. McCants "failed to exhibit due diligence, or prudent regard for his rights, in view of the extended delay between 1992 when he

was not selected . . . and August 1994." *See* EEOC Decision attached to Pl.'s Compl.

Mr. McCants filed this action in September 2000. In his complaint, Mr. McCants claims that he realized that the USDA discriminated against him on the basis of his sex in the 1992 hiring process only after he learned in 1994 that nine black women graduates of Howard had been hired instead. *See* Compl. at 1–2. Mr. McCants claims that based on the "objective and respected" law school rankings by *U.S. News and World Report* and on other "objective credentials" in his resume, women with "seemingly less impressive credentials" had been hired over him.[1] *See* Compl. at 2. The plaintiff also argues that the USDA's failure to investigate his claim, even if it was untimely filed, violated his civil rights under Title VII. *See* Compl. at 5.

In response to the plaintiff's complaint, the defendant filed a motion to dismiss for lack of subject-matter jurisdiction. The defendant argues that the plaintiff failed to timely exhaust his administrative remedies because he did not initiate EEO counseling with the agency until September 1, 1994, the date of his initial letter to Secretary Espy. *See* Def.'s Mot. to Dismiss at 1. The defendant further argues that the plaintiff first suspected discrimination during his December 1991 interview and that this suspicion should have been confirmed when he was notified of his non-selection in May 1992. *See id.* at 4.

---

1. The plaintiff argues that his school, the University of Iowa College of Law, is ranked 250 places higher than Howard University School of Law. While the court takes no position on the merits of the plaintiff's discrimination claim, the court does dispute the accuracy of the plaintiff's representation, especially considering that in 2000, *U.S. News and World Report* ranked only 174 law schools. *See*

The plaintiff responded by moving for default judgment on the basis of the defendant's alleged faulty service of its first responsive pleading. In the alternative, the defendant moves for judgment on the pleadings or for summary judgment. Here again the plaintiff argues that he has made a prima facie case of sex discrimination but fails to address why he failed to contact an EEO counselor within 45 days of the alleged discriminatory act.

## III. DISCUSSION

### A. The Plaintiff's Motion for Entry of Default Judgment

■ The plaintiff moves for entry of default judgment on the grounds of defective service. According to the plaintiff, the defendant should have mailed its first responsive pleading to the plaintiff's Washington, D.C. address and not to the Illinois address that appears in the caption of the plaintiff's complaint. In support of his motion for default judgment, the plaintiff refers to "the local service of summons rules" but points to no specific provision that supports his argument that the defendant's service was defective. Quite to the contrary, both Local Civil Rules 5.1(e) and 11.1 state:

> The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party. . . . Notice of a change in address . . . of . . . a party . . . must be filed within 10 days of the change. Unless changed by notice filed with the Clerk, the address and telephone number of a party . . . noted

<http:// www.usnews.com/usnews/edu/beyond/ gradrank/gblawmet.htm>. The court also notes that many factors go into a hiring decision for new attorneys, including the applicant's ability to analyze complex legal issues, to research and write effectively, and to work well with other attorneys and support staff.

on the first filing *shall be conclusively taken as the last known address* and telephone number of the party. LCvR 5.1(e), 11.1 (emphasis added). Because the plaintiff failed to file a change of address with the clerk of court, the properly used address appearing at the top of the complaint should be taken is his address under the local rules. The plaintiff's claim of faulty service is without merit, and his motion for entry of default judgment is therefore denied.

## B. The Defendant's Motion to Dismiss for Lack of Subject–Matter Jurisdiction

### 1. Legal Standard

The defendant moves to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the plaintiff failed to exhaust his administrative remedies. A 12(b)(1) motion to dismiss "calls into question the court's power to hear the plaintiff's claim ... and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power." 5A Wright & Miller, FED.PRAC. & PROC.CIV.2D § 1350; *see also District of Columbia Retirement Bd. v. United States,* 657 F.Supp. 428, 431 (D.D.C.1987). Consequently, the court need not limit itself to the allegations of the complaint in deciding a 12(b)(1) motion. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, "the court may consider the complaint supplemented by undisputed facts evidenced in the record ... plus the court's resolution of disputed facts." *Her-*

bert v. National Acad. of Sciences, 974 F.2d 192, 197 (D.C.Cir.1992).

### 2. Exhaustion of Administrative Remedies and Equitable Tolling

■■■ Under 29 C.F.R. § 1614.105(a)(1), an aggrieved party must initiate contact with an EEO counselor within 45 days of the date of the alleged discriminatory matter or the effective date of an alleged discriminatory personnel action.[2] As a general rule, parties "must exhaust prescribed administrative remedies before seeking relief from federal courts." *McCarthy v. Madigan,* 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Accordingly, a party must timely file all applicable administrative complaints and appeals to bring a claim in federal court. *See Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997). Because untimely exhaustion of administrative remedies is an affirmative defense, the federal agency bears the burden of pleading and proving it. *See Bowden,* 106 F.3d at 437.

In this case, the undisputed facts show that Mr. McCants failed to contact an EEO counselor at the USDA within 45 days of learning that he had not been selected for a position as an attorney. As his own complaint concedes, Mr. McCants did not contact the USDA concerning the allegedly discriminatory selection process until he learned, in 1994, that nine black women graduates of Howard were selected as part of the 1992 hiring class. This is over two years after the only alleged discriminatory act was perpetrated against Mr. McCants.

Mr. McCants argues, however, that he did not acquire "tangible information" of

---

**2.** Pursuant to its authority under 42 U.S.C. § 2000e–16(b), the EEOC regulates federal agencies' processing of discrimination complaints. These regulations include a time frame for the complainant to seek informal counseling, file formal charges, and appeal agency decisions.

discrimination until 1994. He states that since he contacted Secretary Espy within three days of acquiring this information, he is in compliance with the 45–day time limit. In essence, the plaintiff argues that the court should focus on the date the complainant acquires evidence of discrimination rather than the actual date of the act or the date that the complainant first suspects discrimination as a motivation for the act. Existing law, however, does not support the plaintiff's argument that the time limitation did not begin to run until he learned of facts that supported his employment discrimination claim.

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court held that the limitations period in an employment discrimination case begins to run at the time of the adverse act. The Fourth Circuit later expounded on that decision, holding that while a plaintiff's ignorance of the discriminatory motive for an adverse act is "relevant to an analysis of equitable tolling," it plays no role "in determining the beginning of the statutory limitation period." *See Felty v. Graves–Humphreys Co.*, 785 F.2d 516, 518–19 (4th Cir.1986). The 45–day time period began to run, then, when Mr. McCants learned that he was not selected for the position. Consequently, Mr. McCants failed to contact an EEO counselor within the proper time frame.

 This conclusion, however, does not end the court's inquiry. The administrative time limit for bringing Title VII complaints to the attention of the agency EEO counselor is not a jurisdictional prerequisite to suit in federal court, but rather is "subject to equitable tolling, estoppel, and waiver." *See Bowden*, 106 F.3d at 437; *see also Saltz v. Lehman*, 672 F.2d 207, 208 (D.C.Cir.1982). This Circuit has also held, however, that the court's power to toll Title VII time limitations "will be

exercised only in extraordinary and carefully circumscribed instances." *See Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988). In addition, the plaintiff bears the burden of pleading and proving any equitable reasons for failing to meet the 45–day time limit to contact the agency's EEO counselor. *See Saltz v. Lehman*, 672 F.2d 207, 209 (D.C.Cir.1982).

In *Loe v. Heckler*, 768 F.2d 409, 418–19 (D.C.Cir.1985), the D.C. Circuit stated that the time limit for seeking EEO counseling should be tolled until the claimant "knows or has reason to know the facts that would support a charge of discrimination." In *Loe*, however, the plaintiff's "assiduous effort" to seek an administrative remedy put the agency on notice of the plaintiff's grievance. *See id.* at 417. Further, the Court found it highly relevant that the delay in seeking counseling was "attributable to the agency's resisting an employee's diligent efforts to ferret out the facts." *See id.* at 419.

The D.C. Circuit's opinion in *Loe* does not conflict with or undermine the "reasonable suspicion" standard used in this court. Judge Flannery first applied a "reasonable suspicion" standard to toll the limitations period until the plaintiff should have reasonably suspected discrimination as a motivating factor for the adverse act. *See Paredes v. Nagle*, 27 FEP Cases 1345, 1347, 1982 WL 319 (D.D.C.1982). Judge Flannery dismissed the plaintiff's complaint as untimely, however, because although the plaintiff did not learn the full facts supporting his claim until shortly before he filed his charge, the record revealed that he suspected a discriminatory motive for the action much earlier. *See id.* at 1348, 1982 WL 319.

Similarly, in *Hyson v. Boorstin*, 32 FEP Cases 1542, 1544, 1982 WL 155452 (D.D.C. 1982), Judge Oberdorfer adopted the "reasonable suspicion" standard and dismissed

the plaintiff's complaint as untimely because the administrative record revealed that he suspected discrimination but waited until more evidence came to light to file a complaint. In so holding, Judge Oberdorfer explained that the reasonable suspicion standard was a middle ground between the date that the discriminatory act occurs and the date that the plaintiff first acquires facts necessary to sustain a charge of discrimination. *See id.* at 1543, 1982 WL 155452. Judge Oberdorfer stated that "although these facts may serve to make his claim of discrimination more credible, plaintiff's own statements make it clear that they only served to buttress an already existing 'reasonable suspicion' on his part of discrimination." *See id.* at 1544, 1982 WL 155452.[3]

In this case, the plaintiff has failed to plead or prove any equitable considerations that would justify tolling the 45-day initial contact period. The plaintiff argues that he contacted the USDA within three days of learning that the USDA had hired nine female graduates of Howard in 1992. Undisputed facts in the record reveal, however, that the plaintiff first suspected discrimination on the day of his interview, over two years before he contacted the Secretary. In his September 1994 letter to Secretary Espy, the plaintiff states that his interview was "tainted" and that he began "bracing" himself *that day* to be "kicked in the face" by the USDA because one of the interviewers treated him rudely.

*See* Def.'s Ex. 1. In addition, Mr. McCants told an EEO specialist that he first suspected discrimination at the time of the interview but did not act because he had no tangible evidence and hoped to get a job later. *See* Def.'s Ex. 7. Finally, Mr. McCants's own submissions to this court reveal that, at the very least, he should have suspected discrimination at the time of the interview, as he admits being told in September that there was only one other black male attorney employed by the USDA and describes one of the interviewers as "one bad apple" who belittled him for no apparent reason. *See* Pl.'s Mem. at 4, 7, 8.

Mr. McCants does little to rebut the defendant's claim that he untimely exhausted his administrative remedies. Indeed, while the plaintiff does not deny telling the EEO specialist that he suspected discrimination at the time of the interview, he apparently expects the court to discount that statement because the transcript of the EEO interview contains a minor typographical error and because one of his answers is, according to him, illogical. *See* Pl.'s Mem. at 6–7. Finally, the plaintiff incorrectly argues that the USDA violated Title VII by not investigating his discrimination claim, even if it was untimely filed. *See* Compl. at 5. The court discerns no authority for this proposition.

The court finds that Mr. McCants suspected discrimination during the Decem-

---

**3.** Other circuits make equitable tolling an even higher mountain for the plaintiff to climb. These circuits focus on the plaintiff's affirmative duty to protect his rights, and they refuse to toll the limitations period simply because the plaintiff later learned additional facts. *See, e.g., Olson v. Mobil Oil Corp.,* 904 F.2d 198, 202–203 (4th Cir.1990) (stating that "[i]t is not necessary to the filing of a charge that one possess a proven case" but rather that "one purpose of a charge and a complaint is to initiate the process of uncovering"

additional facts); *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994) (refusing to toll the limitations period because the plaintiff had a "duty to determine whether there was, in fact, a discriminatory motivation" for the adverse action); *Pacheco v. Rice,* 966 F.2d 904, 906–907 (5th Cir.1992) (denying equitable tolling of the limitations period because a complainant has a duty of "diligent inquiry . . . to proceed with a reasonable investigation in response to an adverse event")

ber 6, 1991 interview. This suspicion should have been sufficiently confirmed on the date that he received the non-selection letter. Had Mr. McCants contacted an EEO counselor at that time, information concerning the qualifications of the other hires would have been revealed over two years earlier. By waiting until he learned this information, Mr. McCants put the USDA in the very position that the time limitations are intended to avoid—that of having to defend against a stale claim.

Mr. McCants fails to plead or prove any equitable considerations that would justify tolling the limitations period. Since the plaintiff presents no facts that would justify applying the doctrine of equitable tolling, his claims are time-barred. Accordingly, the court concludes that the plaintiff has failed to timely exhaust his administrative remedies and will grant the defendant's motion to dismiss for lack of subject-matter jurisdiction.

## IV. CONCLUSION

For the reasons stated above, the court will grant the defendant's motion to dismiss and will deny the plaintiff's motion for default judgment and for judgment on the pleadings. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed this *31st* day of July 2001.