**Herbert K. WILSON, Appellant,**

v.

**Federico F. PEÑA, Secretary, Department of Transportation, Appellee.**

No. 94–5273.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1995.

Decided March 22, 1996.

Tracy L. Hilmer, Washington, DC, argued the cause, for appellant, with whom Irving Kator was on the brief.

Michael J. Ryan, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the brief. John D. Bates, Assistant

United States Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Herbert K. Wilson appeals from the dismissal of his Title VII suit against the Coast Guard. The Equal Employment Opportunity Commission found that the Coast Guard had discriminated against Wilson when it failed to hire him as an equal employment manager and ordered the Coast Guard to instate him in a similar position. Wilson eventually sued in district court, contending that the Coast Guard used an inappropriate performance rating in calculating his backpay award and incorrectly offset income he had earned during the period when the Coast Guard had unlawfully denied him the position. The district court ruled that Wilson was too late on the performance rating issue because he filed his complaint more than 30 days after the EEOC's final action on the issue, and too early on the offset issue because he had not yet exhausted his administrative remedies. Because the EEOC's notice of final action advised Wilson that he had 30 days to file his lawsuit, when he actually had 90 days, the limitations period never began to run; therefore his claim on the performance rating issue was filed in a timely manner. Because the EEOC also failed to respond to Wilson's petition for enforcement within 180 days after it was filed, Wilson was entitled to file suit. Accordingly, we reverse.

## I.

Section 717 of the Civil Rights Act, 42 U.S.C. § 2000e–16 (1988 & Supp. V 1993), enacted as part of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, sec. 11, 86 Stat. 103, 111–12, extends Title VII protections to federal government employees. Under § 717(c), a complainant has the right to file a civil action either "[w]ithin 90 days of receipt of notice of final action taken by" the employing agency, or if 180 days have passed since the filing of the complaint and the complainant is aggrieved by the agency's failure to take final action. If the complainant elects instead to appeal the agency's decision to the EEOC, he once again has the right to go to court within 90 days of a final decision by the EEOC or, if the EEOC has taken no action, after 180 days have elapsed. 42 U.S.C. § 2000e–16(c). The limitations period for filing suit was extended from 30 to 90 days by the Civil Rights Act of 1991 and became effective November 21, 1991. Pub.L. No. 102–166, sec. 114, 105 Stat. 1071, 1079.

Whether the statute of limitations ran on the performance rating issue turns on when the EEOC took "final action." We review the factual background in some detail to determine which of three possible events started the statutory clock ticking: the EEOC's initial order of October 29, 1990, finding unlawful discrimination and directing remedial action by the Coast Guard; the Coast Guard's letter of February 14, 1991, informing Wilson of the performance rating that it would use in calculating his backpay award; or the EEOC's decision of August 6, 1992, denying his petition for enforcement. This factual background is also relevant to determining whether the offset issue was premature for failure to exhaust administrative remedies.

In 1984, Wilson applied to the Coast Guard ("the agency") for the position of equal employment manager, at a GM–15 pay grade. After the agency hired another applicant, Wilson began the lengthy administrative process of asserting a Title VII discrimination claim. After the agency's initial decision finding no discrimination was vacated by the Office of Review and Appeals of the EEOC, the agency concluded that Wilson had been the victim of race and sex discrimination but declined to offer Wilson a comparable job because it determined that he would not have been hired even absent the discrimination. Wilson appealed to the EEOC, which found that the agency had failed to meet its burden of showing that Wilson would not have been selected for the position. On October 29, 1990, the EEOC ordered the agency to

> place [Wilson] in the disputed position of Equal Employment Manager, GM–15, or a substantially equivalent position, within ninety (90) days of the agency's receipt of

this decision. The agency is further directed to award appellant appropriate backpay, seniority and any other benefits to which he would have been entitled had he received the disputed position from the date the selectee assumed the position until the time appellant is placed in the position or declines an agency offer for placement in the position. Said backpay shall be computed in the manner prescribed by 5 C.F.R. § 550.805, and shall include any appropriate salary increases *based on an assumption of satisfactory work performance.* (emphasis added)

The EEOC order notified Wilson that "[t]his decision is final unless a timely request to reopen is filed," and that he could file an action in district court within 30 days "unless within that time you decide to file a request to reopen." Wilson's attorney received the order on November 1, 1990.

The agency offered Wilson a job as Equal Employment Manager, GM–15, which he accepted and began performing on January 28, 1991. Wilson's attorney asked the agency what performance ratings it assumed Wilson would have received had he been employed between 1984 and 1990, because that would determine the amount of merit pay increases he would have accrued and whether he would have been entitled to performance bonuses. The agency's assumption would therefore affect both his backpay award and his current salary. On February 14, 1991, the agency told the attorney that it assumed Wilson would have received "fully satisfactory" ratings, which it considered appropriate under the EEOC's order to assume "satisfactory work performance." By statute, however, the agency was required to have a five-tier rating system for employees in Wilson's grade, in which the middle tier was denominated "fully successful," 5 U.S.C. § 4302a(b)(1) (1988), *repealed by* Pub.L. No. 103–89, sec. 3(b)(1)(B)(I), 107 Stat. 981 (1993), and the agency did not have a "fully satisfactory" rating. The agency eventually based its salary and backpay calculations on an assumption that Wilson would have received "fully successful" ratings.

On February 20, 1991, Wilson's attorney wrote to the agency that his salary and backpay should be calculated on the basis of "excellent" or "outstanding" performance ratings because the majority of agency employees in Wilson's grade had received one of those two ratings during the period in question. The record does not contain a response from the agency. On April 4, 1991, Wilson's attorney again wrote to the agency, contending that Wilson could be made whole only by receiving the same salary and benefits that other GM–15 employees had received, which would require his receiving presumptive performance ratings on a par with theirs. If the agency refused to calculate the backpay award on the assumption of an "outstanding" rating, Wilson would "need to bring this enforcement issue to the EEOC." On April 19, 1991, the agency reaffirmed its intention to assume only fully successful performance ratings.

Wilson accepted from the agency $165,-467.33 in backpay and $32,983.03 in attorney's fees in May 1991. On May 30, 1991, his attorney acknowledged receipt of the check and requested that the agency explain how it had computed the backpay award, including whether the agency had taken any offsets against the award for income that Wilson had earned from other sources between 1984 and 1990. Shortly after the EEOC order, Wilson had provided a description of his "moonlighting" employment and copies of his state and federal tax returns for the backpay period at the agency's request to enable it to calculate offsets. The agency did not respond to the May 30 letter.

On November 1, 1991, Wilson petitioned the EEOC for enforcement of its initial order. He complained that the agency had failed to comply with the order by assuming only "fully successful" performance ratings and deducting from the backpay award income that he would have received even if he had been employed by the agency during the period in question. Although the agency opposed the petition regarding the performance rating issue, it agreed to recalculate his backpay on the basis of a fully-successful performance rating if he would provide certain documentation. Accordingly, the agency told Wilson's attorney that:

it is necessary for Mr. Wilson to furnish to the Coast Guard a notarized affidavit, signed under penalties of perjury, indicating all gross income he earned for each of the years covered by the backpay award. The affidavit must further indicate the sources of all income and identify and describe those positions that Mr. Wilson held during the period of time covered by the backpay award in which he earned either salaries or wages. In addition, the affidavit should identify each position as being either full-time or part-time, and whether the position involved night or weekend work.

On August 6, 1992, the EEOC denied Wilson's petition, but remanded to the agency to recalculate the offsets against the backpay award. The EEOC ordered that the agency obtain all documentation necessary, Wilson provide the requested information to the agency within 30 days, and the agency submit its recalculation of the award to a compliance officer within 90 days. The EEOC decision further stated that "[c]ompliance with the Commission's corrective action is mandatory." The EEOC decision also notified Wilson that:

> [t]his decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court WITHIN THIRTY (30) CALENDAR DAYS of the date that you receive this decision. (emphasis in original)

The agency received the decision on August 12, 1992, and Wilson's attorney received it on August 11, 1992.

Thirty days after receiving the EEOC's order, Wilson's attorney mailed two documents. The first, to the agency, was an affidavit signed by Wilson specifying the income that he contended he would have earned even if he had been employed by the agency, totaling $32,553.31. The affidavit essentially reformatted the information that Wilson had earlier provided to the agency. Wilson declared, under penalty of perjury, that his statement of outside income for 1984–1990 "completely and accurately sets forth the sources, gross amounts, and types of income that I received during the period 1984–1990 and would have received even if I had been employed as the Equal Employment Manager for the United States Coast Guard during that period." He further averred that none of the listed items "represent[ed] income from daytime work that I could not have performed had I been employed as the Equal Employment Manager for the United States Coast Guard during the period 1984–1990." In a covering letter signed by his attorney, Wilson reminded the agency that he had previously submitted his income tax returns and W–2 forms. The other item mailed that day was Wilson's request to the EEOC to reopen the enforcement petition, pursuant to 29 C.F.R. § 1613.235(b)(2) (1995), *recodified as amended at* 29 C.F.R. § 1614.407(c)(2) (1995). On September 15, 1992, the EEOC informed Wilson's attorney that the request had been docketed.

On September 30, 1992, the agency acknowledged receiving Wilson's affidavit and requested new information, by notarized affidavit, regarding his gross income for three years preceding the backpay period, when he had had a full-time position with the Department of Health and Human Services "so that our records will clearly demonstrate that the income earned by Mr. Wilson outside of regular work hours for the period 1984–1990 resulted from a continuance of supplemental or moonlight employment of a permanent nature." Also, the agency noted, apparently forgetting its earlier receipt of Wilson's income tax returns for the backpay period, that Wilson's affidavit covered only his allegedly excludable income, while the agency's request and the EEOC's order had asked for a listing of all sources of gross income. There is no response from Wilson in the record; nor is there any evidence that the agency took further action towards recalculating the backpay award.

Meanwhile, the request for reopening languished in the EEOC. The agency sent a letter to the EEOC, with a copy to Wilson's attorney, maintaining that the request was "an improper vehicle for appealing a decision of the [EEOC] on a petition for enforcement." Two months later, on January 22,

1993, the EEOC informed Wilson's attorney that the request for reconsideration had been "erroneously docketed" because "[t]he [EEOC's] regulations ... do not provide for reopening of a decision in a petition for enforcement." The EEOC therefore closed the record of the request for reopening. On February 26, 1993, Wilson filed his court complaint, challenging both the "fully successful" rating and the offset of the alleged "moonlighting" income.

The district court granted the Secretary's motion to dismiss the complaint. The court ruled that Wilson should have filed suit regarding the performance rating issue within 30 days of receiving the agency's February 14, 1991, letter, in which the agency advised that it was going to use "fully satisfactory" ratings in calculating the backpay award. Alternatively, the court ruled that Wilson should have filed suit within 30 days of receiving the EEOC's decision on the enforcement petition, which was "expressly final and included a 30–day notice provision." As to the offsets for interim income, the district court concluded that Wilson had failed to exhaust his administrative remedies. The agency had not yet finished its recalculation of the backpay award when he filed suit; nor had Wilson filed another petition for enforcement with the EEOC to force the agency to comply. Alternatively, the court ruled that the complaint was time-barred because it should have been filed within 30 days of Wilson's receipt of the backpay award in May 1991.

## II.

■ Wilson contends that the district court improperly created an artificial impediment to the "make whole" relief to which he is entitled under Title VII, *see Lander v. Lujan,* 888 F.2d 153, 156 (D.C.Cir.1989) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)), by imposing time limits and ad-

ministrative exhaustion rules of its own devising. He relies on *Nordell v. Heckler,* 749 F.2d 47, 48 (D.C.Cir.1984), for the proposition that his claim on the performance rating issue was filed in a timely manner because his petition to reopen altered the timetable for filing suit. He also maintains that because the request for relief on the offset issue had been pending before the agency for more than 180 days, he was entitled to file suit without further pursuing administrative remedies. We review the dismissal *de novo.*[1] We first determine the correct date from which Wilson's time to file his lawsuit on the performance rating issue began to run. We then address the significance of the error in the EEOC's notice of final action. Finally, we address whether Wilson's offset claim was premature for failure to exhaust his administrative remedies.

### A.

■ **Commencement of limitations period.** The Secretary maintains that the limitations period started to run when Wilson's attorney received the EEOC's initial order on November 1, 1990. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 93, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990). Because the EEOC ordered the agency to assume "satisfactory work performance" when calculating backpay, the Secretary argues, it plainly intended Wilson to receive an award commensurate with "fully successful" ratings. Therefore, in the Secretary's view, Wilson's contention that he is entitled to higher assumed performance ratings challenges the EEOC order itself, and Wilson had to file suit within 30 days (under then-prevailing law) if he wanted to challenge the EEOC's order in court. Wilson maintains that he challenges only the agency's compliance with the EEOC's order; he interprets that order as requiring "outstanding" or "excellent" ratings and believes that he had no reason to

---

1. Both parties submitted, and the district court considered, documents *not referred to in the complaint.* We will therefore treat the dismissal under the standards of Federal Rule of Civil Procedure 56, which governs summary judgment. *McKinney v. Dole,* 765 F.2d 1129, 1134 (D.C.Cir.1985); *Gordon v. National Youth Work*

*Alliance,* 675 F.2d 356, 360 (D.C.Cir.1982). Our standard of review under Federal Rules 12(b)(6) and 56 is the same: *de novo. Moore v. Valder,* 65 F.3d 189, 192 (D.C.Cir.1995) (dismissal); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) (summary judgment).

challenge an order that was wholly favorable to him.

If the EEOC's order were favorable to Wilson, and he challenged only the adequacy of the agency's compliance, then the limitations period would not start with his receipt of the order. *Loe v. Heckler,* 768 F.2d 409, 421 (D.C.Cir.1985); *Nealon v. Stone,* 958 F.2d 584, 592–93 (4th Cir.1992). If, on the other hand, the EEOC order had clearly imposed an assumption of "fully successful" ratings, then the time for Wilson to file a judicial challenge would have begun to run when he received the order.

We agree with the district court that the EEOC's order is ambiguous. "Satisfactory work performance" does not obviously correlate with any of the agency's five performance ratings. Wilson contended that the vast majority of employees at his pay grade had received higher ratings, and consequently he was entitled to at least an "exceptional" rating under the "career path" theory of *Brown v. Marsh,* 713 F.Supp. 20, 22 (D.D.C. 1989), *aff'd sub nom. Brown v. Secretary of the Army,* 918 F.2d 214 (D.C.Cir.1990), *cert. denied,* 502 U.S. 810, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991). Wilson presented documents to the EEOC that he asserted showed that 98% of the agency's GM–15 employees received "outstanding" or "exceptional" ratings in 1988, 100% received such ratings in 1989, and 87% received such ratings in 1990. Under the circumstances, Wilson might reasonably have understood that an employee who performed satisfactorily would receive one of the higher ratings. In light of the need to construe Title VII's procedural rules in a way that allows legally unsophisticated employees to negotiate the process, *Loe,* 768 F.2d at 417, it would be inappropriate to start the clock when Wilson received an order that he reasonably believed to be entirely in his favor, simply because the agency later disagreed with his interpretation.

■ The next plausible date for commencement of the limitations period is when Wilson received the agency's February 14, 1991, letter informing him that the agency planned to calculate his backpay on an assumption of "fully satisfactory" ratings. But the February 14 letter was not a final agency action. The EEOC regulations provide:

> An employee or applicant is authorized by [Title VII] to file a civil action in an appropriate United States district court ... [w]ithin thirty (30) calendar days after receipt of notice of final action taken by the agency on a complaint. ... For purposes of this part, the decision of an agency shall be final only when the agency makes a determination on all of the issues in the complaint. ...

29 C.F.R. § 1613.281(c) (1995), *recodified as amended at* 29 C.F.R. § 1614.408 (1995). When the agency sent the February 14 letter, it had yet to compute a backpay award; its decision to base the backpay on "fully satisfactory" ratings was not "a determination on all of the issues in the complaint." The district court ruled that, even though the letter did not itself constitute final agency action by the Coast Guard, the letter clarified the meaning of the EEOC's ambiguous order, thereby starting the 30–day clock from the date of the letter. The Coast Guard, however, was bound by the EEOC's order, and its construction of the order was not authoritative. *See* 29 C.F.R. §§ 1613.237(a), 1613.238(b)–(c) (1995), *recodified at* 29 C.F.R. §§ 1614.502(a), 1614.503(b)–(c) (1995); *cf. Girard v. Rubin,* 62 F.3d 1244, 1247 (9th Cir.1995). The Coast Guard's non-binding interpretation of the EEOC order cannot retroactively convert the EEOC order into a "final action" adverse to Wilson.

■ Nor did the limitations period begin to run when the agency completed its calculations and sent a backpay check to Wilson in May 1991. The agency did not disclose when it sent the check how the amount had been calculated. Although it had made clear its position on the performance rating issue, the agency had never identified the offsets it made for Wilson's outside income between 1984 and 1990. Wilson promptly requested those details, and the agency never responded until Wilson filed his petition for enforcement. For that reason alone, the limitations period would have been tolled as Wilson sought to discover facts that could give rise to claims he later raised in the enforcement petition. *See Loe,* 768 F.2d at 418–19; *see*

*generally Irwin,* 498 U.S. at 95–96, 111 S.Ct. at 457–58. Further, there is no evidence that the agency notified Wilson when sending the award check that the check constituted final action from which administrative appeal or judicial review could be sought. Without such notice, the award could not trigger the limitations period. *See Williams v. Hidalgo,* 663 F.2d 183, 186–87 (D.C.Cir.1980).

■ The next significant event was the EEOC's August 1992 decision on the petition for enforcement, rejecting Wilson's performance rating claim and remanding the offset claim. As an alternative holding, the district court ruled that the limitations period would have commenced no later than Wilson's receipt of this decision.[2] We conclude, however, that the period never began to run because the decision gave Wilson incorrect notice of his right to sue.

**B.**

■ **Defective notice.** Until 1991, federal employees had to file Title VII lawsuits "[w]ithin thirty days of receipt of notice of final action taken by [the employing agency] or by the Equal Employment Opportunity Commission." 42 U.S.C. § 2000e–16(c) (1988). The Civil Rights Act of 1991 changed the limitations period to 90 days, effective

November 21, 1991. *Id.* (Supp. V 1993). Although the events underlying Wilson's complaint predate the 1991 amendment, application of the 90–day period to Wilson's case would not be retroactive. By applying the 90–day period to Wilson's claim, we do not "attach[ ] new legal consequences to events completed before [the] enactment" of the Civil Rights Act of 1991. *Landgraf v. USI Film Prods.,* —— U.S. ——, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). The extended limitations period does not alter the legal effect of any pre-amendment event, nor does it change the remedies available for pre-amendment violations. *See id.* at ——, 114 S.Ct. at 1502. It attaches legal consequences only to actions taken after the effective date of the amendment, namely to Wilson's filing or failing to file suit within a certain number of days after his attorney received on August 11, 1992, the EEOC remand decision of August 6, 1992, in response to his petition for enforcement.[3]

The EEOC's notice, however, advised Wilson that he could file suit "WITHIN THIRTY (30) CALENDAR DAYS of the date that you receive this decision." Although the EEOC had adopted new regulations reflecting the 1991 amendment, 29 C.F.R. § 1614.408 (1995), those regulations would

---

**2.** The Secretary's suggestion that the petition itself was untimely is unpersuasive. Conceding that neither the statute nor the regulations fixes a time limit for enforcement petitions, the Secretary suggests that the period should be the same as the time for filing a civil complaint. *See* 42 U.S.C. § 2000e–16(c) (1988). Thus, Wilson should have filed a petition for enforcement of the EEOC's October 29, 1990, order within 30 days. The Secretary relies on *Nordell,* 749 F.2d at 49–50, which held that a request to reopen an EEOC decision on a merits appeal must be made during the limitations period in order to toll the period for filing suit in district court.

However, because a request to reopen seeks to alter the original decision, the *Nordell* court held, in the absence of an EEOC regulation, that a request to reopen should be made in the same time in which judicial review could be sought. Otherwise, a complainant could revive a stale claim at any time by filing a request to reopen. *Id.* at 49 (distinguishing *Hofer v. Campbell,* 581 F.2d 975, 978 (D.C.Cir.1978)); *see also* 29 C.F.R. § 1613.234(b)(1) (1995), *recodified at* 29 C.F.R. § 1614.405(b)(1) (1995). By contrast, a petition for enforcement challenges not the order being enforced, but the actions taken by the agency in

response to the order. Those actions will not necessarily occur, or be discovered by the complainant, within 30 days (now 90 days) of the order; the need to file an enforcement petition may not arise until long after the Commission issues the remedial order. Even without a time limit on enforcement petitions, agencies and the EEOC will not face stale claims because a complainant cannot attack the original order through a petition for enforcement. 29 C.F.R. § 1613.238(c) (1995), *recodified at* 29 C.F.R. § 1614.503(c) (1995). What Wilson sought from the EEOC and the district court was a determination whether the agency had properly carried out the remedy ordered, not a review of the remedy itself.

**3.** When a waiver of sovereign immunity is involved, the court is less likely to find that Congress intended retroactive application. *Brown v. Secretary of the Army,* 78 F.3d 645 (D.C.Cir.1996) (construing Civil Rights Act of 1991). As noted, however, application of the 90–day limit in the instant case is not retroactive at all, but merely the prospective application of a waiver of sovereign immunity to a case clearly within the scope of the waiver.

not become effective until October 1, 1992, almost two months later. 57 Fed.Reg. 12,-634, 12,646 (1992). Thus, Wilson's petition for enforcement was governed by the old regulations, including 29 C.F.R. § 1613.281 (1995), which still reflected the old 30–day limitations period. Wilson was given incorrect notice because the EEOC's boilerplate language in its August 6, 1992, decision on the petition had not caught up with the law.

The court confronted a similar situation in *Coles v. Penny*, 531 F.2d 609 (D.C.Cir.1976). Until 1972, Title VII did not protect federal employees. Coles filed a civil service complaint alleging discrimination in 1970. By the time the Civil Service Commission heard his appeal, Title VII had been amended to permit federal employees to seek district court review of final Commission action on such complaints. Seven months after the effective date of the amendment, the Commission promulgated regulations, similar to those previously adopted by the EEOC for private complainants, requiring that federal complainants be given notice of their right to sue and the applicable time limit. *Id.* at 613. However, because Coles' appeal fell into the seven-month period between the effective date of the statutory amendment and the regulatory response, he was not informed of his right to sue when the Civil Service Commission denied his appeal. *Id.* at 611. The court declined to interpret the limitations period so strictly as to bar the lawsuit that Coles filed more than one year later. *Id.* at 614. The court concluded that the statute required that the Commission give the complainant notice of his or her right to sue because "Congress could hardly have been unaware of [the] EEOC regulation" requiring such notice to private-sector complainants, and thus intended to incorporate this interpretive gloss in adopting an analogous statute protecting federal employees. *Id.* Observing that "[s]uch an understanding is consistent with the broad structure and purposes of Title VII," the court noted that

"[t]he scheme established by Congress relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits, and '[procedural] technicalities are particularly inappropriate in [such] a statutory scheme.'" *Id.* at 614–15 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)) (alterations in *Coles* ) (citations omitted).

The court followed *Coles* in *Williams v. Hidalgo*, 663 F.2d 183 (D.C.Cir.1980). In *Williams*, the complainant, who was represented by counsel, had entered into a written settlement of her complaint. More than thirty days later, she sued in the district court to recover attorney's fees incurred during the administrative process. *Id.* at 185. The court held that her complaint should not have been dismissed as untimely because the agency had not given her notice of her right to sue and the 30–day time limit. *Id.* at 187.

We conclude from the structure of section 2000e–16(c) that an aggrieved employee can bring an action in court after the department or agency has finally acted on his or her complaint, subject to the department or agency's power to cut that right off after thirty days by issuing proper notice. When an agency or department has taken final action but has failed to issue a proper notice, we determine that an employee can bring an action in district court within a reasonable time.

*Id.* at 188. The court was clear that "proper notice" under the statute required notice of both the right to sue and the time limit. *Id.* at 187.

█ Under these authorities, the EEOC's failure to apprise Wilson of the correct limitations period means that the period never began to run.[4] Obviously, to be effective, the notice of Title VII rights must be accurate. Moreover, it would be perverse to deprive Wilson of the benefit of the new limitations period simply because he is repre-

---

**4.** For similar reasons to those noted in *Coles*, there is no reason to think that the district court will henceforth be deluged with stale Title VII actions. Our holding applies only to a limited class of complainants, namely federal employees who received defective notices of final action between November 21, 1991, and the EEOC's revision of its boilerplate language to conform with the new law on October 1, 1992. *See Coles*, 531 F.2d at 614. Further, even where the notice is defective, complainants still must file suit within a reasonable time or may be defeated by a laches defense. *Williams*, 663 F.2d at 188.

sented by counsel, whose assistance he sought in an effort to protect his rights under Title VII. "[T]he fact that many Title VII complainants act *pro se* is a valid reason for requiring notice of the limitation in *all* notices of final agency action since one can never determine in advance whether an employee may thereafter proceed *pro se.*" *Id.* (emphasis in original); *cf. Copeland v. Brennan,* 414 F.Supp. 644 (D.D.C.1975), *cited in Coles,* 531 F.2d at 616 n. 18.

Consequently, it does not matter whether Wilson's request to reopen the enforcement petition under 29 C.F.R. § 1613.235(b) was proper, nor whether the January 22, 1993, letter from the EEOC advising Wilson that it had closed the request to reopen constituted "final action" by the EEOC. It is one thing for the EEOC to promulgate regulations limiting a party's right to seek reconsideration and quite another for it to misinform a party about the time available to file a lawsuit. The court has previously concluded that "the term 'notice,' no less than the phrase 'may file a civil action,' requires an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination." *Coles,* 531 F.2d at 616.

For these reasons, we reverse the dismissal of the performance rating issue in the first count of the complaint.

### C.

 **The offset issue.** Wilson also contends that the district court improperly dismissed his challenge to the amount of income that the agency offset against the backpay award. The district court ruled alternatively that Wilson was barred either by the statute of limitations because he did not file suit within 30 days of accepting the backpay check or by his failure to exhaust administrative remedies because he did not fully comply with the EEOC's August 1992 order remanding the offset issue to the agency. Concluding that the district court erred on both points, we reverse this portion of its judgment as well. While issuance of the backpay check did constitute final agency action that normally would have triggered the limitations period, there is no indication in the record that the agency provided adequate notice of Wilson's right to contest the award, and in any event the limitations period would have been equitably tolled by the agency's unresponsiveness to Wilson's request for an explanation of the award. Also, because more than 180 days had elapsed between Wilson's petition for enforcement and the EEOC's remand order, Wilson had an immediate right to sue under Title VII *without* further recourse to administrative remedies; thus, it does not matter how fully he complied with the remand order.

In 1990, when the EEOC originally ordered the agency to hire Wilson and award him backpay, the agency requested that Wilson "submit copies of his Federal or state tax returns for the period and a sworn statement certifying his interim earnings." His attorney sent a letter describing Wilson's past sources of income and the various "moonlighting" jobs that he had held during the backpay period, identifying them by name and nature (part time, night, weekend). The letter explained that the accompanying financial information (tax returns) showed "earnings that fall into two categories," earnings both in-lieu-of and not in-lieu-of Coast Guard income. The letter also stated that Wilson would be providing the requested statement. In a subsequent letter, Wilson's counsel attached another W–2 form (referred to in the earlier letter) and repeated a willingness to cooperate, suggesting counsel be called if the agency needed additional information. Although Wilson, at that point, had not provided the sworn statement it had asked for, the agency calculated a backpay award and issued a check in May 1991.

 Because the agency was able to take final action on the merits of Wilson's complaint, his suit cannot be barred solely for any default in responding to the agency's request for information. If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit. Even though the dismissal is "final action," which would normally trigger the right to sue under § 717(c), the suit will be barred for failure to exhaust administrative remedies.

*Woodard v. Lehman,* 717 F.2d 909, 912, 914 (4th Cir.1983); *Johnson v. Bergland,* 614 F.2d 415, 417 (5th Cir.1980) (per curiam).[5] The purpose of the doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts. *See Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985); *see also Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir. 1995). Thus, even if the plaintiff fails to make a good-faith attempt to comply with reasonable agency requests for information, the policy underlying the doctrine is not served unless the default prevents the agency from acting on the merits of the complaint. This conclusion is borne out by the facts of the cases that have invoked the doctrine, in which the complainants rest on vague allegations of discrimination and refuse to provide any details or dates, thus completely frustrating the agencies' ability to investigate complaints. *E.g., Woodard,* 717 F.2d at 912; *Johnson,* 614 F.2d at 415. The regulation on which the agencies relied in those cases also suggests this result:

> The agency may cancel an allegation or a complaint for failure to prosecute only after it has provided the complainant with a written request, that includes a notice of the proposed cancellation, to provide certain information or otherwise proceed with the complaint, and the complainant has failed to satisfy the request within 15 calendar days of its receipt. However, instead of canceling for failure to prosecute, the complaint may be adjudicated if suffi-

cient information for that purpose is available.

29 C.F.R. § 1613.215(a)(6) (1995), *codified as amended at* 29 C.F.R. § 1614.107(g) (1995).[6] If the agency concludes that it has sufficient information to take final action on the merits, there is no reason to impose additional requirements on the complainant. The exhaustion requirement is a "practical and pragmatic" one and should not be invoked when it serves no practical purpose. *Brown,* 777 F.2d at 14, 16–17 (quoting *President v. Vance,* 627 F.2d 353, 363 (D.C.Cir.1980)). Where the agency has taken final action based on an evaluation of the merits, it cannot later contend that the complainant failed to exhaust his remedies.[7]

■■■■ The district court was therefore correct in concluding that Wilson could have sued in May 1991.[8] The agency had taken final action on his complaint following an EEOC appeal, rendering irrelevant any purported shortcomings in the information provided to that point by Wilson. Nor was Wilson's suit time-barred because more than 30 days elapsed between his receipt of the backpay award and his filing suit. There is no record of Wilson's receiving notice of his right to sue when the check was issued. As we explained in Part II B *supra,* the lack of such notice prevents the limitations period from commencing. Furthermore, after receiving the check, Wilson promptly requested the details underlying the offsets from the agency's backpay award. Even if the limitations period had begun to run in May 1991, it would have been equitably tolled by the

---

**5.** Other cases involving a complainant's non-cooperation are distinguishable from Wilson's case. In *Jordan v. United States,* 522 F.2d 1128, 1129–30 (8th Cir.1975), the plaintiff did not wait for final action or for 180 days, but filed suit less than two months after seeking administrative relief, professing to have lost confidence in the agency's appeals process. In *Beale v. Blount,* 461 F.2d 1133, 1140 (5th Cir.1972), the court found that the plaintiff "deliberately bypass[ed]" the administrative procedures by refusing to present to the agency the discrimination claim underlying his lawsuit.

**6.** The older cases cite former 5 C.F.R. § 713.215, the precursor of the current regulation.

**7.** This does not mean that the agency will lose on the merits; it simply means that the complainant is entitled under the statute to his day in court.

For example, although Wilson's arguable failure to provide all of the requested information does not bar him from seeking judicial relief, he will not get any such relief if he cannot substantiate his claim at trial.

**8.** There is some authority to the effect that a claimant in Wilson's position must first file a petition for enforcement before judicially challenging an agency's compliance with an EEOC order. *Curtis v. Mosbacher,* 52 Fair Empl. Prac.Cas. (BNA) 1141, 1143 (D.D.C.1990). We need not decide this question because of our holding that Wilson not only filed such a petition but also adequately exhausted the remedies available under the petition procedure.

agency's withholding of information vital to Wilson's claim. *See Loe,* 768 F.2d at 419 & n. 21; *Irwin,* 498 U.S. at 95–96, 111 S.Ct. at 457.

After the agency issued the backpay award, its next request for information from Wilson was its letter of April 20, 1992. By that time, more than five months had passed since Wilson had filed his petition for enforcement, and Wilson had no obligation to respond further to agency requests for information. The EEOC's original remedial order was binding on the agency, which had no choice but to carry out the "ministerial" function of calculating the amount of the award. 29 C.F.R. § 1613.237(a), *recodified as amended at* 29 C.F.R. § 1614.502(a) (1995); *see also* 51 Fed.Reg. 29,482, 29,484 (1986). The agency had a period in which to comply and had the right to make reasonable requests for necessary information from Wilson. Once the agency made its calculation and issued the check, Wilson was entitled by the regulations to petition for EEOC review. 29 C.F.R. § 1613.238(a) (1995), *recodified at* 29 C.F.R. § 1614.503(a) (1995). The petition for enforcement challenged whether the agency had fulfilled its obligations with regard to both the performance rating and the backpay award under the original EEOC remedial order, and 29 C.F.R. § 1613.238 committed the resolution of that dispute not to the agency but to the EEOC. *See also* 29 C.F.R. § 1613.239(c) (1995). Nothing in the statute or the regulations required Wilson to afford the agency an opportunity to recalculate the backpay award. It necessarily follows that he was not required to provide the agency information that it requested in order to make such a recalculation. Certainly Wilson could have voluntarily responded to the agency's request, but he was also entitled to await the EEOC's decision on both of his challenges.[9]

Ultimately, the EEOC did order Wilson to provide the backpay period information to the agency, specifically, to reformat the information in affidavit form. By that time, however, more than nine months had passed since Wilson had filed his petition for enforcement. Section 717(c) provides that a complainant may file a judicial suit "after one hundred and eighty days from the filing of the initial charge with the ... agency ... or with the Equal Employment Opportunity Commission on appeal from a decision or order of such ... agency ... until such time as final action may be taken by a[n] ... agency...." Once a complainant files a complaint or appeal and cooperates with the agency or EEOC for 180 days, he is not required to take any further action to exhaust his administrative remedies. *See Grubbs v. Butz,* 514 F.2d 1323, 1327–28 (D.C.Cir.1975); *Clark v. Chasen,* 619 F.2d 1330, 1332–37 (9th Cir.1980). After Wilson filed the petition for enforcement with the EEOC, the EEOC did not request any information from him during the 180-day period, so Wilson cannot be faulted for failing to cooperate. Nor was final action "taken by [the] agency" within that time; when the 180-day limit was reached, the petition was still pending and the propriety of the original award had not been evaluated. Once the 180 days ran, the only thing that could have terminated Wilson's right to sue was if the agency had belatedly taken final action, at which point the 90-day statute of limitations would have started to run. That never happened. Although the EEOC eventually rendered a decision on the petition, § 717(c) requires that the *agency* take final action, and the agency in this case never completed the recalculation of Wilson's award.[10]

The only remaining question is whether the 180-day limit applies to a petition for enforcement. Considering the statutory scheme and its remedial purposes, we conclude that such a petition is an "appeal

---

9. This discussion is not meant to foreclose the possibility that the EEOC could permit discovery in matters pending before it. Before the EEOC remand order, however, Wilson was not under any order from the EEOC to comply with the agency's request; nor did the EEOC regulations require compliance with such requests generally.

10. Even if the EEOC's remand decision could have constituted final action for purposes of § 717(c), its failure to give accurate notice of the time limit in which Wilson could bring suit would have prevented the 90-day limitations period from commencing. *See supra* Part II B.

from a decision" of an agency within the meaning of § 717(c), and that a petitioner can therefore proceed to court after 180 days have passed without final agency action. The statute confines agencies and the EEOC to a tight schedule and gives great weight to the complainant's interest in obtaining speedy resolution of the complaint. This court observed in *Grubbs:*

> The 180 day provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute. Indeed, the Act is in part a response to Congressional realization that "the doctrine of exhaustion of remedies ... had become [a] barrier to meaningful court review." Requiring a complainant to further pursue administrative remedies after fulfilling all the prerequisites to suit specified by the EEOA, and most importantly, after 180 days have elapsed without final administrative action, would frustrate that response.

514 F.2d at 1328 (quoting *Hackley v. Johnson,* 360 F.Supp. 1247, 1251 (D.D.C.1973), *rev'd on other grounds sub nom. Hackley v. Roudebush,* 520 F.2d 108 (D.C.Cir.1975)) (alterations in *Grubbs*) (footnote omitted); *see also Bethel v. Jefferson,* 589 F.2d 631, 643–44 (D.C.Cir.1978). We see no reason why a similar policy should not prevail at the petition for enforcement stage, especially since any complainant who reaches that stage has necessarily already waited through at least the original agency complaint and one EEOC appeal.

The statutory language imposing the obligation to take final action within 180 days performs a similar function when applied to a petition for enforcement as it does when applied to the first appeal to the EEOC on the merits of the underlying claim. *See Grubbs,* 514 F.2d at 1328; *see also Hackley v. Roudebush,* 520 F.2d 108, 118–21, 136 (D.C.Cir.1975). In both instances the EEOC is accorded a limited period of time to decide the appeal, while the complainant is assured of having reasonably prompt access to the courts. This approach is consistent with the balance that Congress has struck. *See Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976). It also avoids creation of "a massive procedural roadblock to access to the courts." *McRae v. Librarian of Congress,* 843 F.2d 1494, 1496 (D.C.Cir.1988) (per curiam) (quoting *President v. Vance,* 627 F.2d 353, 362 (D.C.Cir.1980)). We conclude that Wilson obtained a right to sue 180 days after he filed the petition for enforcement, at which time there had been no final action.[11]

Because Wilson did all that was required of him for 180 days after filing the petition for enforcement, any defects in the information subsequently provided by Wilson have no bearing on the question whether he had a right to proceed in court.[12] The belated EEOC remand order set up a schedule for compliance, under which Wilson would provide further information to the agency and the agency would recalculate the backpay award and report back to the EEOC within 90 days. The agency never did recalculate the award; it blames Wilson because, in the agency's view, he did not provide all of the information required by the remand order.[13]

11. In his briefs, Wilson maintains that his suit was properly filed because more than 180 days elapsed between the *remand order* and the commencement of the lawsuit. The Secretary responds that Wilson is barred from suing because he failed to exhaust his remedies during that 180–day period. We do not reach the question whether another 180–day statutory period started when the EEOC issued its remand order, because we hold that the failure of the agency to act within 180 days of the *petition* satisfies the exhaustion requirement.

12. Wilson was "aggrieved" within the meaning of § 717(c) by the failure of the agency to take final action within 180 days of the filing of the petition for enforcement, notwithstanding the agency's contention that Wilson's alleged failure to comply with the EEOC's belated remand order prevented such action. As discussed, circuit precedent precludes an interpretation of the term "aggrieved" that would require a complainant to pursue administrative remedies not mentioned in the statute beyond the 180–day period. The legislative history supports that interpretation. *See* S.Rep. No. 415, 92d Cong., 1st Sess. 16–17, 45–46 (1971), *cited in Clark,* 619 F.2d at 1334.

13. In its request for additional information concerning Wilson's employment history before he applied for the position with the Coast Guard, the agency suggested that the employee must

On this basis, the district court dismissed the complaint. It does not matter, however, whether Wilson provided the requested information. Because Wilson had waited for more than 180 days for the EEOC to decide his petition for review, the statute gave him the right to come to court. Neither the agency nor the EEOC could require him to jump through any further administrative hoops. The court reached a similar conclusion in *McRae*, where the complainant, having sought relief from the agency for almost two years, was held not to have failed to have exhausted her administrative remedies when she went to court and declined to go forward with an administrative hearing. 843 F.2d at 1496. Wilson, like McRae, could have chosen to continue to try to resolve the matter ad-

ministratively. In many instances, it may be faster and less burdensome to avoid recourse to the courts. But whether Wilson would finally have obtained what he sought from the agency is irrelevant here.[14] The only things that matter are that his right to sue under Title VII had been perfected, and that he chose to exercise that right.

Accordingly, we reverse the judgment of the district court.

show that his "moonlighting" employment was "permanent" in the sense that the employee held such employment before the backpay period. The agency relied on *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 454 (5th Cir.1973). However, the Fifth Circuit did not impose a literal "permanency" requirement on "moonlighting" employment in calculating backpay awards. Rather, the court stated that:

> if an [employee] can hold his supplemental job and his desired full time job simultaneously and there is reason to believe he will do so, the supplemental job assumes a permanent rather than an interim nature. Those earnings would be independent of the position sought and should not be taken into account in back pay calculations.

*Bing*, 485 F.2d at 454. The court's discussion of permanency was descriptive, not prescriptive. "Interim earnings" are deducted from Title VII backpay awards. *See* 42 U.S.C. §§ 2000e–5(g)(1), 2000e–16(d) (1988 & Supp. V 1993). The Fifth Circuit therefore described non-deductible earnings as "permanent" to contrast with the statutory term "interim." As the quoted language makes clear, the court did not require the employee actually to hold the "moonlighting" job permanently, but only to show that he could hold the supplemental job and his full-time job simul-

taneously and that there was reason to believe that he would. Thus, where it would be literally impossible for the employee to hold both jobs, the Fifth Circuit concluded that the "moonlighting" earnings were correctly deducted from the backpay award. 485 F.2d at 454. Because Wilson's submissions reflected "supplemental" employment of a non-interim nature under the *Bing* analysis, the relevancy of the pre-backpay period under 5 C.F.R. § 550.805 (1995) is unclear on the record before this court.

14. The government also appears to contend that Wilson's suit was untimely because the EEOC granted the agency an extension of time to recalculate the backpay award, and Wilson filed suit before the extension expired. While the record is unclear as to when and how the purported extension was authorized or whether Wilson was given any notice of it, the EEOC has no authority to prevent a complainant from proceeding to court after 180 days have passed without agency action. Not only did the extension run beyond 180 days from the enforcement petition, but, as we have made clear, the 180 days had already run before the matter was even remanded to the agency.