**Fe CARTER, Plaintiff,**

**v.**

**DISTRICT OF COLUMBIA, Defendant.**

**No. CIV. A. 97–0343 (PLF).**

United States District Court,
District of Columbia.

Aug. 4, 1998.

H. Vincent McKnight, Jr., Ashcraft & Gerel, Washington, DC, for Plaintiff.

Phillip A. Lattimore, III, Asst. Corporation Counsel, Washington, DC, for Defendant.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment on plaintiff's claim of employment discrimination based on race/ethnicity and national origin under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, plaintiff's claim of employment discrimination based on race/ethnicity under 42 U.S.C. § 1981, and plaintiff's claim of retaliation under Title VII and 42 U.S.C. §§ 1981 and 1983. Defendant contends that plaintiff's claims must be dismissed on the ground that they are time-barred.

Upon consideration of defendant's motion, plaintiff's opposition, and the exhibits thereto, and plaintiff's and defendant's supplemental filings, as well as the arguments presented at the July 16, 1998 motions hearing, the Court concludes that plaintiff's employment discrimination claim under Title VII is not time-barred, while her employment discrimination claims under Sections 1981 and 1983 are barred by the applicable statutes of limitations. Plaintiff's employment discrimination claim under Section 1983 also fails to allege violations necessary to establish municipal liability. Plaintiff's retaliation claim under Title VII and Section 1981 are timely. Plaintiff's retaliation claim under Section 1983 also fails to allege violations necessary to establish municipal liability. Defendant's motion for summary judgment therefore will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, a Hispanic female originally from the Dominican Republic, was an employee of the District of Columbia Metropolitan Police Department. She alleges that defendant discriminated against her on the basis of race/ethnicity and national origin when one of its African–American male employees, Bennie Coates, referred to her by an ethnically negative name. Plaintiff also alleges that defendant, through Mr. Coates, retaliated against her for charging him with discrimination by trying to run her over with his car and generally harassing her through other remarks and actions over a period of years. Plaintiff further alleges that defendant discriminated against her on the basis of her race and national origin when the MPD did not take effective steps to stop this treatment.

Sometime in 1991, plaintiff received an award from a professional organization known by the letters "A.P.C.O." On September 24, 1991, in plaintiff's presence, Mr. Coates showed other coworkers a napkin on which he had written that "A.P.C.O." stood for "Asshole Puerto Rican Communications Operator." Mr. Coates later put the napkin in the trash and plaintiff retrieved it, brought it to the MPD EEO officer, and filed an informal written complaint alleging that she had been discriminated against on the basis of her "Hispanic ethnicity." The Director of

the Communications Division took a statement from Mr. Coates in which Mr. Coates admitted the incident. Thereafter, Mr. Coates was detailed to another division and location and ordered to stay away from MPD headquarters, where the Communications Division was housed. *See* Pl.'s Opp'n to Mot. for Summ. J., Ex. 13. In addition, on November 19, 1991, the Labor Relations Division of the MPD recommended that Mr. Coates receive a five-day suspension, but the recommendation was never implemented. Plaintiff claims that she never received a formal interview or notice about the outcome of her complaint. Plaintiff alleges that after the 1991 "napkin incident" she repeatedly asked her supervisors to transfer her, but nothing was done.

Plaintiff also alleges that in December of 1991, while Mr. Coates was not supposed to be near MPD headquarters, he tried to run her over with his car outside police headquarters, driving toward her in a reckless manner and stopping only a few feet from the intersection in which she and other employees were walking. Plaintiff allegedly reported this incident to her supervisors, but no action was taken. Plaintiff says she was told that investigators thought Mr. Coates was just "playing" with her. In February of 1992, plaintiff alleges another employee told her that Mr. Coates commented that as soon as he was promoted to supervisor he was going to make her regret that she had charged him with discrimination. Mr. Coates became a supervisor in November, 1992, but he was not plaintiff's direct supervisor; rather, he was assigned to supervise the shift opposite that on which plaintiff worked.

Plaintiff alleges that after Mr. Coates returned to headquarters and became a supervisor, he would seek contact with her just so he could order her around. She describes various incidents in which he singled her out and spoke to her harshly. On one occasion, for example, plaintiff was talking with two other employees, one of whom was on duty. Although Mr. Coates did not demand that the other off-duty employee stop the conversation and leave the area, plaintiff alleges that he yelled at plaintiff and ordered her to leave. On another occasion, plaintiff had

been authorized by a supervisor to get change from a box in the supervisor's office, but, she alleges, when Mr. Coates saw her he yelled that she was "not allowed to get her hands in that box." Plaintiff also alleges that Mr. Coates constantly bothered and intimidated her by making nasty remarks and by standing near her. She began to seek counseling for job-related stress and was diagnosed with bi-polar depression.

On May 24, 1994, plaintiff was called to a supervisor's office where money for a retirement gift was being collected. Mr. Coates was in the office. Mr. Coates did not say anything to plaintiff, come near her or touch her. Upon seeing him, however, plaintiff alleges that she suffered a reaction in which she became very upset and went home sick. She did not return to work and has been collecting disability pay since then.

On July 12, 1994, an MPD EEO officer conducted an exit interview with plaintiff. At that time, she was informed by written memorandum of the action taken by the MPD regarding her complaint about the "napkin incident." The memorandum stated that Ms. Carter had been verbally advised, at the completion of the "napkin incident" investigation, "of the outcome of that investigation and what other options that were available to [her]. The record does not reflect any written notice." Pl.'s Opp'n to Mot. for Summ. J., Ex. 15. The memorandum also advised plaintiff that she could "pursue any other action that [she] deemed appropriate," but it did not advise plaintiff of her right to file a formal complaint within 15 days. *Id.*

On August 22, 1994, plaintiff filed charges of discrimination with the District of Columbia Office of Human Rights ("DCHR") and with the Equal Employment Opportunity Commission, alleging, *inter alia*, national origin discrimination and retaliation. Pl.'s Opp'n to Mot. for Summ. J., Exs. 19 and 23. In January 1997, DCHR issued a "Letter of Determination" stating that it had failed to find probable cause to pursue the matter. With respect to plaintiff's subsequent rights, the letter advised plaintiff that she could appeal the decision to the City Administrator but that the matter would only be reopened if she had new evidence. Pl.'s Opp'n to Mot.

for Summ. J., Ex. 20. When plaintiff tried to appeal to the City Administrator, she was advised that she had to appeal instead to the DCHR, but she did not do so.

On February 20, 1997, plaintiff filed suit in this Court. On May 28, 1998, the Department of Justice issued her a right-to-sue letter.

At a July 16, 1998 motions hearing, the Court issued a decision from the Bench, partially granting the District's motion for summary judgment, and entered judgment for the defendant on plaintiff's claims of discrimination on the basis of sex and disability, as well as on plaintiff's due process violation claim. After concluding that the only remaining claims were plaintiff's claims of discrimination on the basis of race/ethnicity and national origin and plaintiff's claim of retaliation, the Court took under advisement whether these claims were time-barred under the applicable statutes of limitations. The Court now concludes that plaintiff's discrimination claim under Title VII and her retaliation claims under Title VII and Section 1981 are not barred and will proceed to trial, but that her discrimination claims under Sections 1981 and 1983 and her retaliation claim under Section 1983 were not timely filed and that judgment therefore must be entered for the defendant on these claims.

## II.  DISCUSSION

A.  *Discrimination Claims on the Basis of Race/Ethnicity and National Origin*

■ Plaintiff asserts that her discrimination claims are not barred by the applicable statutes of limitations because her claims are founded upon a continuing violation theory of discrimination. The Court disagrees.

■ A continuing violation may be established by showing "a series of related acts, one or more of which falls within the limitations period." *See Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982). In this case, however, plaintiff suffered only one act of alleged discrimination, the "napkin incident," which took place on September 24, 1991. The other incidents plaintiff complains of are acts of retaliation and are subsumed in her retalia-

tion claims rather than her discrimination claims. Because she has alleged only one act of discrimination, "the napkin incident," plaintiff may not avail herself of the continuing violation theory.

Furthermore, because the only incident of discrimination alleged took place on September 24, 1991, plaintiff would have had to file her Title VII-based administrative complaint with the EEOC or with the DCHR within 300 days of the incident, or by approximately July 24, 1992. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff did not file a complaint with the EEOC or with the DCHR, however, until August 22, 1994, two years too late. Having failed to exhaust her remedies in a timely fashion, plaintiff would normally be barred from filing suit in this Court.

Similarly, because it has been held that the statute of limitations for both Section 1981 and Section 1983 is three years, plaintiff would have had to file her Section 1981 and Section 1983 discrimination claims in this Court within three years of the date of the incident, that is by September 24, 1994. *See Crocker v. Piedmont Aviation Inc.,* 49 F.3d 735, 744 (D.C.Cir.1995); *Banks v. Chesapeake and Potomac Telephone Co.,* 802 F.2d 1416, 1418–23 (D.C.Cir.1986); *Harris v. Perini Corp.,* 948 F.Supp. 4, 7 (D.D.C.1996); *Saunders v. George Washington University,* 768 F.Supp. 854, 867–68 (D.D.C.1991). Plaintiff did not file suit until February 20, 1997, two and one half years too late. Plaintiff therefore is outside the relevant limitations period.

■ Plaintiff asserts, however, that her discrimination claims are timely under an equitable tolling rationale. The Court concludes that plaintiff's Title VII discrimination claim is subject to equitable tolling, but that her Section 1981 and Section 1983 discrimination claims are not.

Once an employee files a complaint with the District of Columbia government agency by whom he or she is employed, the District of Columbia Municipal Regulations state that the agency EEO office shall conduct a final interview about the outcome of a complaint within 21 days of the filing of the complaint, and that the complainant must be notified in

writing, at the end of this 21–day period, of her right to file a formal complaint with the DCHR within 15 days. 4 DCMR §§ 105.3–105.4. District of Columbia Municipal Regulations also state that the DCHR shall complete its investigation within 180 days. 4 DCMR § 106.7. Furthermore, if the EEOC, or, in this case, the DCHR, fails to act on a complaint within 180 days, the complainant is to be notified of the agency's inaction, 42 U.S.C. § 2000e–5(f)(1), is free to file a lawsuit within 90 days or within 90 days of receipt of a "right to sue" letter, *id.,* and must be notified of that right to sue along with the inaction notice. 29 C.F.R. § 1601.19(a); 29 C.F.R. § 1601.13(c); *see Equal Employment Opportunity Commission v. Commercial Office Products Co.,* 486 U.S. 107, 112, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

In this case, defendant failed to timely process plaintiff's complaint, failed to timely notify her of the outcome of its investigations into her complaint, and failed to advise her of her right to file a formal complaint or file suit. Plaintiff was not informed 21 days after the commencement of the MPD EEO investigation, as required, that she had another 15 days in which to file a formal complaint with the DCHR. Nor was she informed on July 12, 1994, when MPD finally issued the memorandum on the outcome of her 1991 complaint, of this same right to file a formal complaint with the DCHR within 15 days. The statement in the July 12, 1994 memorandum that she was verbally advised of "what other options that were available to [her]" does not suffice. None of defendant's officials deposed during discovery said that they had verbally advised plaintiff of her right to file a formal complaint with the DCHR, nor does anything in the record clarify what is meant by the MPD EEO investigator having advised plaintiff of "other options that were available to [her]." By contrast, plaintiff says that the MPD EEO office did not provide any notice, oral or written, and plaintiff's statement must be taken as true on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Despite not having been advised of her rights, plaintiff did file charges with both the DCHR and the EEOC on August 22, 1994, but the DCHR did not finish acting on plaintiff's complaint until January 17, 1997, almost two and a half years after it was filed. The DCHR never notified plaintiff that it had not acted on her complaint within 180 days of its filing or that she had a right to sue within 90 days of such notice because of the DCHR's inaction.

Courts in this Circuit have found it appropriate to equitably toll the statute of limitations where the plaintiff has received "inaccurate or ineffective notice from a government agency required to provide notice of the limitations period." *Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997); *Wilson v. Pena,* 79 F.3d 154, 161 (D.C.Cir.1996); *Williams v. Hidalgo,* 663 F.2d 183, 187 (D.C.Cir.1980). The time bar has also been suspended where the EEOC did not issue a right to sue letter until six years after the complaint was filed and plaintiffs did not know and were not told of their right to sue when the EEOC fails to act within 180 days. *See Bishopp v. District of Columbia,* 602 F.Supp. 1401, 1404 (D.D.C.1985), *rev'd on other grounds,* 788 F.2d 781, 783 n. 1 (D.C.Cir.1986). Since a layperson is not expected on her own to understand the intricacies of the various filing requirements, *see Wilson v. Pena,* 79 F.3d at 161; *Bishopp v. District of Columbia,* 602 F.Supp. at 1404, plaintiff could not have been expected to know of her rights to proceed without the requisite notice by the MPD EEO office and the DCHR. Any delays in filing her Title VII discrimination claim either with the DCHR or with this Court therefore are not the fault of plaintiff and should be excused regardless of any pre-existing time-bar.

Defendant argues that the statute of limitations should not be equitably tolled because the procedures required by the District of Columbia Municipal Regulations are directory, rather than mandatory. This proposition is not supported by a correct reading of *Abolaji v. D.C. Taxicab Commission,* 609 A.2d 671 (D.C.1992), on which defendant relies. A narrow reading of *Abolaji* indicates that the court held only that the time limit in a regulation governing taxicab licenses, not relevant here, is "directory, rather than man-

datory." *Abolaji v. D.C. Taxicab Commission*, 609 A.2d at 672. A broader reading indicates that the court at most held that it is the procedures' time limits, rather than the procedures themselves, that are "directory, rather than mandatory." Even though defendant ultimately may have complied with the required procedures in this case, it cannot argue on the one hand that it was not required to act within the time limits, but argue on the other hand that plaintiff's claims are time-barred because she waited for defendant to act, especially when defendant failed to advise plaintiff of the relevant administrative time limitations.[1]

By contrast to her Title VII claim, the equitable tolling rationale does not assist plaintiff with respect to her Section 1981 and Section 1983 claims because there is no requirement to exhaust administrative remedies under these statutes before proceeding to court Employees who believe they have suffered discrimination have the right to bring a Section 1981 or a Section 1983 claim at any time within three years of the alleged discrimination. *See Crocker v. Piedmont Aviation Inc.*, 49 F.3d at 744; *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d at 1418–23; *Harris v. Perini Corp.*, 948 F.Supp. at 7; *Saunders v. George Washington University*, 768 F.Supp. at 867. The ability to exercise this right is not subject to the exhaustion of an administrative remedy, and there is no administrative regulation requiring notice of the three year statute of limitations to potential Section 1981 or Section 1983 plaintiffs. Furthermore, because a Section 1981 claim is "separate from and independent of" Title VII, the statute of limitations on a Section 1981 or Section 1983 claim is not tolled by the pendency of administrative action on a Title VII claim. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *see Szarejko v. Great Neck School Dist.*, 795 F.Supp. 81, 85 (E.D.N.Y.1992); *Reese v. City of Emeryiville Fire Dept.*, 746 F.Supp. 987, 988 (N.D.Cal.1990). Defendant thus had no obligation to inform plaintiff of her rights regarding a Section 1981 or Section 1983 claim. It was plaintiff's responsibility to become aware of her right to bring such claims within the three-year limitations period, and the statute of limitations therefore cannot be equitably tolled.

Plaintiff's Section 1983 claim falls for an additional reason. In order to make out a claim against the District of Columbia or any other municipality, Section 1983 requires a plaintiff to allege a policy or custom that directly caused the asserted violation of her federal civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Haynesworth v. Miller*, 820 F.2d 1245, 1271–72 (D.C.Cir.1987). More specifically, plaintiff must allege that defendant's discriminatory action was due to its maintenance of a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).[2] To the extent that plaintiff's com-

---

1. Although the Court concludes here that plaintiff's Title VII discrimination claim remains alive for trial, the Court seriously questions plaintiff's ability to establish a *prima facie* case with respect to this claim, let alone prove her claim by a preponderance of the evidence—an issue that defendant has not yet raised before the Court. In order to establish a *prima facie* case of employment discrimination under Title VII in this case, plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged or suffered an adverse employment action; and (4) similarly situated employees outside of the her protected class were placed in her position following the discharge or otherwise received more favorable treatment. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–06, 113

S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the facts plaintiff alleges in this case, the Court is skeptical that plaintiff will be able to establish the third and fourth elements of a *prima facie* case of discrimination. In fact, it is not clear to the Court whether plaintiff has even alleged any facts that would establish the fourth element of a *prima facie* case.

2. A plaintiff may also establish municipal liability by alleging that a high-ranking official with final decision making authority committed the tort at issue, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), or that that official ratified a subordinate's action, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107

plaint can be construed as alleging such a pattern and practice, it alleges a pattern and practice that relates solely to the violation of procedural due process rights, not to discrimination against those similarly situated to the plaintiff. This Court previously granted defendant's motion for summary judgment with regard to plaintiff's procedural due process claims and any allegations encompassed by those claims. Plaintiff has failed to allege a discriminatory pattern or practice in connection with her discrimination claims and consequently has failed to allege violations necessary to establish municipal liability. Her Section 1983 claim therefore must fall.

### B. *Retaliation Claims*

█ Plaintiff invokes the continuing violation theory to assert that her retaliation claims under Title VII, Section 1981 and Section 1983 are not barred by the statute of limitations. As noted, a continuing violation may be established by showing "a series of related acts, one or more of which falls within the limitations period." *See Valentino v. United States Postal Service*, 674 F.2d at 65. Because defendant's alleged retaliation toward plaintiff consists of a series of events allegedly beginning in December of 1991 and continuing through plaintiff's last days of work in May of 1994, her Title VII and Section 1981 claims can be considered under the continuing violation theory. Plaintiff filed her Title VII claim with the DCHR and EEOC on August 22, 1994, well within 300 days of the last act of alleged retaliation in May of 1994. Plaintiff filed suit on her Section 1981 claim on February 20, 1997, within three years of the last act of alleged retaliation in May of 1994. Plaintiff's Title VII and Section 1981 claims of retaliation therefore were timely filed.[3]

Plaintiff's Section 1983 claim of retaliation, however, while technically timely under the three year statute of limitations, fails to al-

lege violations necessary to establish municipal liability. For the same reasons as plaintiff's complaint fails to allege a pattern and practice of discrimination toward those similarly situated to the plaintiff, it fails to allege a pattern and practice of retaliation toward those similarly situated to the plaintiff. Plaintiff's Section 1983 retaliation claim therefore falls.

An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### *ORDER*

This matter is before the Court on defendant's motion for summary judgment on plaintiff's claim of employment discrimination based on race/ethnicity and national origin under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, plaintiff's claim of employment discrimination based on race/ethnicity under 42 U.S.C. § 1981, and plaintiff's claim of retaliation under Title VII and 42 U.S.C. §§ 1981 and 1983. Defendant seeks judgment in its favor on the ground that all claims are time-barred. For the reasons stated in the Court's Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment on the ground that plaintiff's remaining claims are untimely under the applicable statutes of limitations is GRANTED in part and DENIED in part, and it is

FURTHER ORDERED that JUDGMENT is entered for defendant with respect to plaintiff's claims of discrimination under Sections 1981 and 1983; and it is

FURTHER ORDERED that JUDGMENT is entered for defendant with respect

---

(1988). In this case, however, plaintiff has alleged neither of these propositions.

**3.** The May 24, 1994 incident on plaintiff's last day of work, in which plaintiff became upset upon seeing Mr. Coates in the supervisor's office, cannot be considered an incident of retaliation, as plaintiff does not allege that Mr. Coates made

any remarks toward her, stood near her or bothered her on that day. Rather, plaintiff's reaction was allegedly a response to previous retaliation. Plaintiff does, however, claim that Mr. Coates' harassment of her was continual and persisted through her last days at work, which were in May of 1994.

to plaintiff's claim of retaliation under Section 1983.

SO ORDERED.